1  Michael D. Braun, Esq. (Bar No. 167416)
   service@braunlawgroup.com
2  **BRAUN LAW GROUP, P.C.**
   10680 W. Pico Blvd., Suite 280
3  Los Angeles, CA 90064
   Phone: (310) 836-6000
4  Fax:    (310) 836-60106

5  Matthew Zevin, Esq. (Bar No. 170736)
   mzevin@smi-law.com
6  **STANLEY, MANDEL & IOLA, L.L.P.**
   525 B Street, Suite 760
7  San Diego, CA 92101
   Phone: (619) 235-5306
8  Fax:    (815) 377-8419

9  **ADDITIONAL COUNSEL LISTED
   ON SIGNATURE PAGE**
10
   *Counsel for Plaintiffs*
11

12            **UNITED STATES DISTRICT COURT**

13            **CENTRAL DISTRICT OF CALIFORNIA**

14               **WESTERN DIVISION**

15            CV09-7335 SJO        (MANx)

16  ALFREDO M. LOPEZ and LAUREN          CASE NO.
    R. GREENE, individually and on behalf
17  of all others similarly situated,       CLASS ACTION

18            Plaintiffs,              **ORIGINAL CLASS ACTION
                                       COMPLAINT**
19
          vs.                         **JURY TRIAL DEMANDED**
20
    AMERICAN EXPRESS BANK, FSB,
21  and AMERICAN EXPRESS
    CENTURION BANK,
22
23            Defendants.

24
25
26
27
28

FILED

2009 OCT -8  PM 3: 20

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

Plaintiffs, Alfredo M. Lopez and Lauren R. Greene, individually and on behalf of all others similarly situated, allege as follows:

## I.

## NATURE OF CASE

1.     Plaintiffs Alfredo M. Lopez and Lauren R. Greene are American Express credit card customers.  On behalf of themselves and a proposed class of similarly situated American Express customers ("the Class"), they seek an injunction and damages pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*, and damages under Utah law because American Express is improperly purporting to change their fixed annual percentage rate of interest to a variable rate, thereby increasing their rate – despite the fact that neither this change nor this increase was disclosed as required by TILA.

## II.

## JURISDICTION AND VENUE

2.     Jurisdiction is conferred on this Court by 15 U.S.C. § 1640(e).

3.     Venue lies in this District pursuant to 28 U.S.C. § 1391.

## III.

## PARTIES

4.     Plaintiff Alfredo M. Lopez ("Mr. Lopez") is an individual who resides in Marina del Rey, California.  Plaintiff Lauren R. Greene ("Ms. Greene") is an individual who resides in Marina del Rey, California.  Mr. Lopez and Ms. Greene are sometimes referred to hereinafter collectively as "Plaintiffs."

5.     Defendant American Express Bank, FSB, is a thrift headquartered in Salt Lake City, Utah.  American Express Bank, FSB, does business throughout the United States.

6.     Defendant American Express Centurion Bank is an industrial loan bank headquartered in Salt Lake City, Utah.  American Express Centurion Bank does business throughout the United States.

**ORIGINAL CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED**

7.     Defendants are hereinafter collectively referred to as "American Express" or "the Bank."[1]

## IV.

## BACKGROUND

8.     The annual percentage rate of interest ("APR") is a fundamental term on which banks extend credit.  APR is the cost of credit expressed as a yearly rate.  Because all lenders are subject to the same rules designed to insure the accuracy of the APR, it is a valuable tool for consumers to use in comparing the cost of credit.

9.     Congress passed TILA to protect consumers from inaccurate and unfair credit billing and credit card practices.  TILA and its implementing regulation, 12 C.F.R. §§ 226, *et seq.* ("Regulation Z"), require detailed disclosures by lenders in connection with open-ended credit arrangements.  Such disclosures must, among other things, clearly, conspicuously and accurately disclose all potentially applicable APRs, the methodology for calculating such APRs, and all events and circumstances by which the APRs may apply or change.

## V.

## FACTUAL ALLEGATIONS

10.     The terms of the credit American Express extends to its credit card customers are governed by the card member agreement ("Agreement") it provides to such customers upon an offer and acceptance of credit.  American Express occasionally purports to modify its Agreements by sending customers "Notices of Change" to the terms of the Agreements.

11.     In or around October, 2003, American Express mailed a credit card solicitation letter (the "Solicitation Letter") to Mr. Lopez.  In the Solicitation Letter, American Express offered Mr. Lopez an introductory APR of 3.9% for six months, after which time the APR would be fixed at "just 12.99%."  Specifically, underneath the

---

[1] *See, infra,* ¶ 19.

ORIGINAL CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED

heading "Take off with a low 3.9% introductory APR and no annual fee," American Express promised Mr. Lopez:

> You'll enjoy a low introductory 3.9% APR for your first six months with the Delta Skymiles Options Credit Card. It's perfect for transferring balances from other cards that charge higher rates. Then you'll continue to enjoy a low fixed APR of just 12.99%.

A true and correct copy of the Solicitation Letter is attached hereto as Exhibit "A."

12.    American Express included a document entitled "Disclosure" (the "Initial Disclosure") with its Solicitation Letter. The terms in the upper left-hand corner of the Initial Disclosure mirrored the terms in the Solicitation Letter: under the heading "Annual Percentage Rate (APR) for Purchases," American Express states, "3.9% Introductory rate for purchases during the first six months of Card membership. Then, a fixed rate of 12.99%." The figure "12.99%" appears in a font size at least twice as large as that of any other character on the Initial Disclosure. In contrast to the fixed 12.99% rate for purchases, the Initial Disclosure states (under the heading "Variable Rate Information"): "Your APR may vary. The APR for Cash Advances is determined monthly by adding 14.99% to the Prime Rate." A true and correct copy of the Initial Disclosure is attached hereto as Exhibit "B."

13.    Under the heading "Other APRs," the Initial Disclosure states "Default APR. Fixed rate of 23.99%. See explanation below.*" Below, the Initial Disclosure lists four grounds which will cause the Default Rate to replace the other stated rates. The Initial Disclosure does not disclose that the purchase rate can be changed from a fixed rate to a variable rate or that it can be increased for any reason other than one of the four listed grounds of default.

14.    On or about October 27, 2003, Mr. Lopez mailed a complete application for a credit card to American Express. In the application, Mr. Lopez accepted American Express' invitation for an additional card to be issued to Ms. Greene. American Express issued cards to Mr. Lopez and Ms. Greene in December, 2003.

**ORIGINAL CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED**

15.     With the cards American Express sent to Mr. Lopez and Ms. Greene, American Express also sent the Agreement and a "Supplement to the Cardmember Agreement" ("Supplement").  The Agreement itself does not reference the introductory 3.9% APR or the 12.99% fixed APR for purchases; rather, the Agreement states: "Your DPR's ['Daily Periodic Rate'] and APR's for purchases appear on the accompanying supplement(s)."  The first full sentence of the Agreement states, "This document and the accompanying supplement(s) constitute your Agreement."  A true and correct copy of the Agreement is attached hereto as Exhibit "C," and a true and correct copy of the Supplement is attached hereto as Exhibit "D."

16.     The Supplement states: "Current Purchase APR(s): Intro: 3.90% intro APR (0.0107% DPR) in effect through billing periods ending 05/04.  Standard: 12.99% (0.0356% DPR)."  Following the information for the purchase APR, the Supplement states, "Current Cash Advance APR*: Standard: 18.99% (0.0520% DPR)."  Several lines beneath this statement, the asterisk reference explains, "*This is a variable APR, see your Cardmember Agreement for additional details."  Exh. "D."  The Agreement states that "The APR for Cash Advances is the Prime Rate plus 14.99%."  Exh. "C."

17.     Thus, the Agreement and the Supplement, consistently with the Solicitation Letter and Initial Disclosure, obligate American Express to provide Mr. Lopez and Ms. Greene with a fixed rate APR for purchases of 12.99% following six months of use of the card (during which time the APR is 3.9%).  In contrast, the Agreement and Supplement, consistently with the Initial Disclosure, permit American Express to charge Mr. Lopez and Ms. Greene a variable APR for cash advances, consisting of the prime rate plus 14.99%.  *See* Exhibits "A"-"D."

18.     Nowhere in the Agreement, Supplement, Initial Disclosure, or Solicitation Letter does American Express clearly and conspicuously disclose that the APR for purchases is, or ever could be changed to, a variable rate tied to the prime rate (or any other rate); rather, American Express very clearly distinguishes the *fixed* APR for purchases from the *variable* APR for cash advances.  *See* Exhibits "A"-"D."  Likewise,

4

**ORIGINAL CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED**

nowhere in those documents does American Express ever disclose that the APR for purchases can be increased for reasons other than the listed grounds of default.

19.    On or about March 21, 2008, American Express sent Mr. Lopez a letter acknowledging an incorrect assessment of charges on his account.  The bottom of the letter states, "The issuer of this card is American Express Bank, FSB."  A true and correct copy of this letter is attached hereto as Exhibit "G."  Thus, notwithstanding the fact that American Express Centurion Bank is a party to the Agreement, both American Express Centurion Bank and American Express Bank, FSB are named as Defendants in this Complaint and are referred to collectively as "American Express."

20.    On or about August 6, 2009, American Express sent Mr. Lopez a letter ("Letter"), enclosing a "Notice of Changes to Your Account ("Notice of Changes")."  In the Letter, American Express states:

> Like all companies large and small, our pricing has to be responsive to the business and economic environment.  As a result, we have found it necessary to increase rates and fees on some of our products.  Below are the principal changes to your account:
>
> •    We are changing your Annual Percentage Rate (APR) on purchases from a fixed rate to a variable rate.  This change will result in an increase to your APR.

American Express further explains that the changes apply to existing balances, and "go into effect for billing periods that begin on or after October 1, 2009."  A true and correct copy of the Letter is attached hereto as Exhibit "E," and a true and correct copy of the Notice of Changes is attached hereto as Exhibit "F."

21.    The Notice of Changes states, "[W]e are changing the Standard APR for Purchases from a fixed rate to a variable rate equal to the Prime Rate plus 11.25%.  As of August 1, 2009, the Prime Rate plus 11.25% is an APR (Annual Percentage Rate) of 14.50% and a DPR (Daily Periodic Rate) of 0.0397%."  The Notice of Changes also states, "the terms of your account are subject to change in accordance with the American Express Cardmember Agreement ('Agreement') governing your Account referenced in

or with this notice (including increasing rates and fees, *changing fixed rates to variable rates*, and adding new terms)."  (Emphasis added).

22.    Contrary to the language of the Notice of Changes, however, nothing in the Agreement, Supplement, Solicitation Letter or Initial Disclosure states that American Express can change a fixed rate to a variable rate.  *See* Exhibits "A"-"D."  Rather, the Agreement, Supplement, Solicitation Letter, and Initial Disclosure all make clear that the APR for purchases is a fixed rate, while the APR for cash advances is a variable rate. *See* Exhibits "A"-"D."  Further, none of these documents clearly and conspicuously discloses that the fixed rate for purchases can be increased for reasons other than the four stated grounds of default.  *See* Exhibits "A"-"D."

23.    Thus, American Express has changed the fixed purchase APR of Mr. Lopez and Ms. Greene (together with the APRs of all similarly-situated customers) to a variable rate, thereby raising it, despite having previously disclosed and committed to a fixed APR for purchases and never having disclosed in a clear and conspicuous manner that the fixed rate for purchases could be changed to a variable rate or could be increased for reasons other than the four stated grounds of default.  Buried near the end of the Agreement, following several pages of fine print, American Express included a provision ("Changing this Agreement") that purports to allow it to "change the terms of or add new terms to this Agreement at any time, in accordance with applicable law."  Exh. "C," p. 3. This provision does not constitute clear and conspicuous notice that American Express could increase the fixed APR for purchases for reasons other than the four stated grounds of default, or that American Express could change the fixed APR for purchases to a variable rate.  Shortly thereafter, American Express included a provision that states: "This Agreement and your Account, and all questions about their legality, enforceability and interpretation, are governed by the laws of the State of Utah (without regard to internal principles of conflicts of law), and by applicable federal law."  Exh. "C," p. 3.

24.    Mr. Lopez and Ms. Greene have an existing balance to which American Express has applied the variable, higher APR.  Mr. Lopez and Ms. Greene cannot afford

**ORIGINAL CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED**

to pay off the entirety of that balance to avoid being subject to the higher interest charges as a result of American Express having changed their fixed purchase APR to a variable APR.

## VI.

## CLASS ACTION ALLEGATIONS

25.     Mr. Lopez and Ms. Greene bring this action on behalf of themselves and a Class of all other persons similarly situated pursuant to Fed. R. Civ. P. 23.

26.     The Class consists of:

> All persons in the United States who were credit card customers of American Express on October 1, 2009, and as to whom American Express purported to change the annual percentage rates of interest governing their purchases from a fixed rate to a variable rate as of that date.  Excluded from the Class are American Express; any parent, subsidiary, or affiliate of American Express or any employees, officers, or directors of American Express; legal representatives, successors, or assigns of American Express; and any justice, judge or magistrate judge of the United States who may hear the case, and all persons related to any such judicial officer, as defined in 28 U.S.C. § 455(b).

27.     There are questions of law and fact that are common to all members of the Class, which questions predominate over any question affecting only individual Class members.  The principal common issues are:

a.     whether American Express violated TILA through its actions as described herein;

b.     whether Plaintiffs and the Class members have a right to recover damages by virtue of American Express' failure to comply with TILA;

c.     whether American Express breached the implied covenant of good faith and fair dealing pursuant to Utah law;

d.     whether Plaintiffs and the Class members have a right to recover damages by virtue of American Express' breaches of the implied covenant of good faith and fair dealing pursuant to Utah law; and

7

e.  the nature and extent of any other remedies, including statutory damages and injunctive relief, to which proposed Class members are entitled as a result of American Express' wrongful conduct.

28.  The only individual questions concern the computation of damages to be awarded each Class member, which questions can be determined by a ministerial examination of the relevant files.  For notice purposes, Class members can be identified using American Express' computerized databases of customer records.

29.  Plaintiffs' claims are typical of the claims of all of the other Class members, because their claims are based on the same legal and remedial theories as the claims of the Class and arise from the same course of conduct by American Express.

30.  Plaintiffs will fairly and adequately protect the interest of all Class members in the prosecution of this Action and in the administration of all matters relating to the claims stated herein.  Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of the Class they seek to represent.  Plaintiffs have retained counsel experienced in handling class action lawsuits involving United States federal law claims and state consumer law claims.  Neither Plaintiffs nor their counsel have any interest which might cause them not to vigorously pursue this action.

31.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, in that:

a.  the losses suffered by the Class members are such that prosecution of individual actions is impractical or economically unfeasible;

b.  by contrast, the profits obtained by American Express as a result of its unlawful practices are substantial;

c.  in the absence of the class action device, Plaintiffs and the Class would be left without a remedy for the wrongful acts alleged, and American Express will be unjustly enriched;

d.  the prosecution of separate lawsuits by individual members of the Class would create the risk of inconsistent adjudications with respect

8

1    to individual Class members, which would establish incompatible

2    standards of conduct for American Express, making concentration of

3    the litigation concerning this matter in this Court desirable;

4    e.    the claims of the representative Plaintiffs are typical of the claims of

5    the Class; and

6    f.    no unusual difficulties are likely to be encountered in the

7    management of this action as a class action.

8    32.    The Class is so numerous as to make it impracticable to join all members as

9    Plaintiffs.  Based upon the investigation of counsel, the number of members of the Class

10    is estimated to be in excess of 100,000 persons.

11    **FIRST CAUSE OF ACTION**

12    **(Violation of the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.*)**

13    33.    Mr. Lopez and Ms. Greene repeat and reallege all paragraphs above as if set

14    forth fully herein.

15    34.    In enacting TILA, Congress found

16    that economic stabilization would be enhanced and the
      competition among the various financial institutions and other
17    firms engaged in the extension of consumer credit would be
      strengthened by the informed use of credit.  The informed use
18    of credit results from an awareness of the cost thereof by
      consumers.  It is the purpose of [TILA] to assure a meaningful
19    disclosure of credit terms so that the consumer will be able to
      compare more readily the various credit terms available to him
20    and avoid the uninformed use of credit, and to protect the
      consumer against inaccurate and unfair credit billing and credit
21    card practices.

22    15 U.S.C. § 1601(a).  Thus, the purpose of TILA is to assure meaningful disclosures that

23    accurately reflect the credit terms to which parties are legally bound.

24    35.    Pursuant to TILA, credit card transactions are conducted under "open end

25    credit plans," which TILA defines as "a plan under which the creditor reasonably

26    contemplates repeated transactions, which prescribes the terms of such transactions, and

27    which provides for a finance charge which may be computed from time to time on the

28    outstanding unpaid balance."  15 U.S.C. § 1602(i).

9

36.     TILA and Regulation Z require a credit card issuer to clearly, conspicuously, and accurately disclose in writing the legal obligations of the parties, including the applicable annual percentage rate.  12 C.F.R. §§ 226.5(a), (c) & 226.6(a).

37.     By failing to disclose in the Solicitation Letter and Initial Disclosure that it could or would change Plaintiffs' and the Class' APRs for purchases from a fixed rate to a variable rate or that the APRs for purchases could increase for any reason other than the four listed grounds of default, American Express violated TILA and Regulation Z. 12 C.F.R. § 226.5a(a).

38.     By failing to disclose in the Agreement and Supplement that it could change Plaintiffs' and the Class' APRs for purchases from a fixed rate to a variable rate or that the APRs for purchases could increase for any reason other than the four listed grounds of default, American Express violated TILA and Regulation Z.  12 C.F.R. §§ 226.5(a), (c) & 226.6(a).  Alternatively, given the complete lack of reference or relation of the purported "Changing this Agreement" provision of the Agreement to the provisions of the Agreement and the Supplement disclosing a fixed rate for purchases, and by essentially hiding the "Changing this Agreement" provision in fine print, American Express failed to disclose clearly and conspicuously in the Agreement that it could change Plaintiffs' and Class' APRs for purchases from a fixed rate to a variable rate and it thereby violated TILA and Regulation Z.  *Barrer v. Chase Bank USA, N.A.*, 566 F.3d 883, 891-92 (9th Cir. 2009).  Additionally, given the complete lack of reference or relation of the purported "Changing this Agreement" provision of the Agreement to the provisions of the Agreement and the Supplement disclosing a fixed rate for purchases, and the fact that those provisions provide four grounds for default as the only basis for increasing the fixed rate, and by essentially hiding the "Changing this Agreement" provision in fine print, American Express failed to disclose clearly and conspicuously in the Agreement that it could increase the fixed rate for purchases for reasons other than the four stated grounds of default, and it thereby violated TILA and Regulation Z. *Barrer,* 566 F.3d 883, *supra.*

10

39.     As a result of its violations of TILA and Regulation Z, Plaintiffs and the Class are damaged, and American Express is subject to the full extent of civil liability prescribed by law.  American Express' failures to disclose clearly and conspicuously that it unilaterally reserved the right to change Plaintiffs' and the Class' APRs for purchases from a fixed rate to a variable rate or that the APRs for purchases could increase or change from a fixed rate to a variable rate for any reason other than the four listed events of default are material omissions giving rise to a presumption of reliance on the part of Plaintiffs and the Class that proximately caused damages to Plaintiffs and the Class. Plaintiffs and the Class are accordingly entitled to all actual and statutory damages pursuant to 15 U.S.C. § 1640(a), and to injunctive relief.

## SECOND CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

40.     Mr. Lopez and Ms. Greene repeat and reallege all paragraphs above as if set full forth herein.

41.     The Agreements between Plaintiffs and the other members of the Class and American Express provide for loans at fixed annual percentage rates.  Specifically, the Agreement and the Supplement, consistent with the Solicitation Letter and Initial Disclosure, obligated American Express to provide Plaintiffs and the other members of the Class with a 12.99% fixed rate APR for purchases (following the initial six month offer of 3.9%).

42.     APR is a fundamental term of the use of credit and is critical to a consumer's ability to repay debt in a responsible and timely manner.  A fixed APR was the central focus of American Express' Solicitation Letter and became a central term in the Agreement and the Supplement between Plaintiffs and the other members of the Class and American Express.

43.     Under Utah law, a covenant of good faith and fair dealing is implied in every contract, including those governing the use of credit between Plaintiffs and the Class and American Express.  In particular, American Express' reservation of the

11

unilateral and unrestricted right to modify the Agreement in its sole and unfettered discretion in the "Changing this Agreement" provision is subject to the covenant of good faith and fair dealing.

44.    Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract.

45.    Plaintiffs and members of the Class expressly bargained for credit for purchases at fixed APRs.  The subsequent unilateral modifications of the purchase APRs from fixed to variable rates represents a fundamental change to the most material term of the Agreements and is clearly beyond the reasonable expectations of the parties.  That it was unilaterally imposed by the party with superior bargaining power solely to the detriment of Plaintiffs and the Class makes the conduct even more unreasonable by any objective standard.

46.    By changing the purchase APRs from a fixed to a variable rate, American Express denied Plaintiffs and members of the Class of the benefits of their bargain.

47.    Plaintiffs and members of the Class incurred damages and were injured as a result of paying additional interest on their loans due to American Express' unilateral modification of their APRs from fixed to variable rates.

## VII.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, Alfredo M. Lopez and Lauren R. Greene, on behalf of themselves and the Class, request the following relief:

1.    An order certifying that this action is properly brought and may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs be appointed as Class Representatives, and that Plaintiffs' counsel be appointed Class Counsel;

2.    Actual and statutory damages pursuant to 15 U.S.C. § 1640;

12

3.     Damages for breach of the implied covenant of good faith and fair dealing pursuant to Utah law;

4.     An injunction preventing American Express from continuing the unlawful conduct alleged herein;

5.     An award of reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1640; and

6.     Such other relief at law or equity as this court may deem just and proper.

## VIII.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial for all claims so triable.

DATED:  October 8, 2009          Respectfully Submitted,

**BRAUN LAW GROUP, P.C.**

By: _____

Michael D. Braun, Esq.
10680 W. Pico Boulevard, Suite 280
Los Angeles, CA 90064
Phone:   (310) 836-6000
Fax:       (310) 836-6010

Matthew Zevin, Esq.
mzevin@smi-law.com
**STANLEY, MANDEL & IOLA, L.L.P.**
525 B Street, Suite 760
San Diego, CA 92101
Phone: (619) 235-5306
Fax:     (815) 377-8419

[*List of Attorneys continued on next page*]

13

Marc R. Stanley, Esq.
   (*Pro Hac Vice Application Pending*)
   mstanley@smi-law.com
Roger L. Mandel, Esq.
   (*Pro Hac Vice Application Pending*)
   rmandel@smi-law.com
Martin Woodward, Esq.
   (*Pro Hac Vice Application Pending*)
   mwoodward@smi-law.com
**STANLEY, MANDEL & IOLA, L.L.P.**
3100 Monticello Avenue, Suite 750
Dallas, TX 75205
Phone:   (214) 443-4300
Fax:       (214) 443-0358

Andrew S. Kierstead, Esq. (Bar No. 132105)
ajkier@aol.com
**LAW OFFICE OF ANDREW KIERSTEAD**
1001 SW 5th Avenue, Suite 1100
Portland, Oregon  97204
Phone;   (508) 224-6246
Fax:       (508) 224-4356

Peter N. Wasylyk, Esq.
   (*Pro Hac Vice Application Pending*)
   pnwlaw@aol.com
**LAW OFFICES OF PETER N. WASYLYK**
1307 Chalkstone Avenue
Providence, Rhode Island  02908
Phone:   (401) 831-7730
Fax:       (401) 861-6064

John Koenig, Esq. (Bar No. 132104)
johnkoeniglaw@roadrunner.com
**LAW OFFICE OF JOHN KOENIG**
274 S Westgate Avenue
Los Angeles, CA 90049
Phone:   (310) 472-2124

***Counsel for Plaintiffs***

**ORIGINAL CLASS ACTION COMPLAINT; JURY TRIAL DEMANDED**

# EXHIBIT A



There is ⬛ ⬛⬛⬛⬛⬛ and you're
able to ⬛⬛⬛⬛ every day.

C328:0002

Mr. Alfredo Lopez

[REDACTED]

Ildlullandalllladbadahalalallablalalalal

Dear Mr. Lopez:

Did you know there's a credit card that allows you to earn free travel — without having to pay an annual fee? It's the Delta SkyMiles® Options Credit Card from American Express, which lets you earn SkyMiles with every purchase and then redeem them for free travel rewards.

### Take off with a low 3.9% introductory APR and no annual fee.

You'll enjoy a low introductory 3.9% APR for your first six months with the Delta SkyMiles Options Credit Card. It's perfect for transferring balances from other cards that charge higher rates.[1] Then you'll continue to enjoy a low fixed APR of just 12.99%.

### 1,000 bonus SkyMiles give you a head start toward free travel.

The first time you use your Card you'll earn 1,000 bonus SkyMiles.[2] Then you'll earn one SkyMile for every eligible two dollars you charge to your Delta SkyMiles Options Credit Card, whether you're dining out, shopping at the market, or even filling your gas tank. Plus, you'll earn one SkyMile for every dollar you spend with Delta.[2] And when you give fee-free Additional Cards to people close to you, you'll earn SkyMiles for all their spending too. You could be on your way to one of Delta's over 400 exciting award destinations worldwide before you know it.

### Experience the superior services and benefits of American Express.

With benefits like the Purchase Protection Plan,[4] Buyer's Assurance Plan,[5] and the Online Fraud Protection Guarantee,[6] the Delta SkyMiles Options Credit Card from American Express lets you shop with confidence. And when you travel, you'll be treated to personal service at over 1,700 American Express Travel Service locations across the U.S. and around the world.[7]

The Delta SkyMiles Options Credit Card offers you substantial value in a variety of ways, from the ability to earn SkyMiles without paying an annual fee to the quality service you receive as an American Express® Cardmember. Just complete the enclosed application and send it in today. Your next vacation could be closer than you think.

Sincerely,

Gordon A. Smith

Gordon A. Smith
President, Consumer Cards
American Express

Christine Pierce

Christine Pierce
Director, Partnership Marketing
Delta Air Lines

P.S. The Delta SkyMiles Options Credit Card — an easy way to earn SkyMiles without paying an annual fee. Sign up today and start planning your next vacation.

No annual fee

Low intro rate

ODNL-31

02-06-6881

# EXHIBIT B

| Annual Percentage Rate (APR) for Purchases. | Other APRs | Variable Rate Information. | Grace Period for Repayment of the Balance for Purchases. | Method of Computing the Balance for Purchases. | Annual Fee. | Minimum Finance Charge. |
|---|---|---|---|---|---|---|
| • 3.9 % Introductory rate for Purchases during the first six months of Cardmembership. Then, a fixed rate of **12.99%**. | • Balance Transfer APR: 3.9% Introductory rate for Balance Transfers during the first six months of Cardmembership. Then a fixed rate of 12.99%. Cash advance APR 18.99%. Default APR: Fixed rate of 23.99%. See explanation below.* | • Your APR may vary. The APR for Cash Advances is determined monthly by adding 14.99% to the Prime Rate. See explanation below.** | • 20 days for Purchases if full balance is paid by the due date. | • Average daily balance (including new Purchases). | • No annual fee. | • $0.50 |

**Other Fees**. Late Payment Fee: $15 on balances less than $100, $29 on balances of $100 to $1,000, and $35 on balances greater than $1,000. Overlimit Fee: $29. Balance transfer fee: There is no balance transfer transaction fee associated with this offer. However, future balance transfers may incur a fee of 3% of the amount transferred with a minimum of $5 and a maximum of $50. Fee for Cash Advances through Express Cash: 3% of each withdrawal with $5.00 minimum and no maximum. The line of credit offered with the Delta SkyMiles® Options Credit Card from American Express is from $2,000 to $100,000.

* Your account is reviewed monthly and will be considered in default if minimum payments are not timely paid, your account is overlimit, any account terms are breached, or the account is otherwise in default as defined in the Cardmember Agreement. In each case during any portion of the 12-month period ending with the Closing Date of the current billing period ("review period"). Defaulted accounts will forfeit the introductory and any promotional rates. If a promotional rate is in effect, that rate will apply and expire according to the promotional terms disclosed to you when you were offered the account or promotional opportunity. We may apply payments and credits first to your balances with lower APRs (including balances with promotional APRs) before balances with higher APRs. This will result in the lower APR balances being paid before the higher APR balances.

** The Prime Rate for billing periods ending in any month is the higher of the Prime Rate(s) listed in *The Wall Street Journal* on the 1st or 20th day (or if such date is not a business day, the next business day) of the prior month. Variable APRs are accurate through 9/30/03.

• **New York residents may contact the New York Banking Department to obtain a comparative listing of credit card rates, fees, and grace periods by calling 1-800-518-8866.**

Information on Balance Transfers. If I have offered and accepted an opportunity to transfer balances on credit cards to American Express Centurion Bank ("AECB"), I authorize AECB to forward payment on my behalf on the account(s) indicated in my application to the related account-issuing bank(s). I understand that my American Express Credit Card account will be debited for the total transfer amount requested up to my line of credit. If my request exceeds the available credit line, the transfer request will be honored up to my available credit line and I will be notified. I understand that I will be assessed finance charges, as stipulated in the Cardmember Agreement, at the time a check is issued to my current credit card institution. I also understand that I will receive the Cardmember Agreement prior to the processing of the balance transfer. I certify that the account listed on my application is in good standing, and I agree to maintain its current status at least until AECB has forwarded payment on my behalf. I agree to keep paying the current minimum payment on the account until confirmation appears on my American Express Credit Card statement. I understand that transfers may take five to six weeks. I authorize AECB to verify the status and balance of such accounts, and understand that AECB may, at its discretion, deny a transfer request. I will agree that I continue to be liable to the account issuer pursuant to the respective credit agreement, and that I have met the transfer requirements listed on my application. I understand that AECB shall not be liable for any matters arising out of or related to such accounts or for incomplete or inaccurate information provided by me. Balance Transfer is restricted to Basic Cardmembers only. Additional Cardmembers may not request or authorize any Balance Transfers to the Basic Cardmember's American Express Credit Card account. I acknowledge that any benefit or service offered with the Card may be modified or terminated at any time.

## TERMS AND CONDITIONS

SkyMiles are subject to the Delta SkyMiles Membership Guide and Program Rules.

By signing or returning this application, I ask that an account be opened in my name and Card(s) issued as I request, and that you renew and replace them until I cancel. I agree to be bound by the agreement governing my account. I agree to be liable for all charges to my account, including charges incurred with any Additional Card(s) issued on my account now or in the future. I understand that my Delta SkyMiles Options Credit Card account may not be issued to me if this form is altered, the information on it is not complete, accurate or verifiable, or I have responded to another offer within the last 90 days or have been approved for another product from you

I understand that I must provide all the information requested in this application and I certify that such information is accurate. I authorize you to verify the information on this application and to receive and exchange information about me including requesting reports from consumer reporting agencies. If I ask whether or not a consumer report was requested, you will tell me, and if you received a report, you will give me the name and address of the agency that furnished it. I authorize you and your affiliates and subsidiaries to contact these sources for information at any time, to use information about me for marketing and administrative purposes, and to share such information with each other, unless I direct you not to share with your affiliates and subsidiaries certain credit information (other than transaction or experience information) about me or any Additional Card applicant(s) by writing to you at: American Express, P.O. Box 7852, Ft. Lauderdale, FL 33329. (Please include Social Security number and indicate if your request applies to Additional Card applicants as well.)

**Additional Cards.** I have advised Additional Card applicant(s) that you may obtain, verify, exchange, and use information about them in the same manner as described above, that they may be responsible for payment of their own charges if I fail to pay them, and that their own credit records may be affected by non-payment of the account. I understand that Additional Card(s) will not be issued to me if I have an unsatisfactory account with American Express or if the Additional Card applicant(s) have ever had an unsatisfactory account with American Express. I acknowledge that any benefit or service offered with the Card may be modified or terminated at any time.

Iowa is not currently within American Express Centurion Bank's Credit Card service area; therefore, Cards cannot be issued to residents of this state. This offer is not available to residents of Puerto Rico. **Express Cash**. By accepting the Card, I also have the option to request enrollment in your Express Cash ATM program. I will receive the terms and conditions, including fees, in the Agreement when I receive my Card. I acknowledge that I must call American Express to enroll in the Express Cash program.

• An applicant, if married, may apply for a separate account.

• Patriot Act Notice. Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account, including your name, address, date of birth and other information that will allow us to verify your identity.

• Married Wisconsin Residents: No provision of any marital property agreement, unilateral agreement, or court decree under Wisconsin's Marital Property Act will adversely affect a creditor's interest unless, prior to the time credit is granted, the creditor is furnished a copy of that agreement or decree, or is given complete information about the agreement or decree.

The Delta SkyMiles Options Credit Card is not eligible for enrollment in the *Membership Rewards*® program.
SkyMiles is a Registered Trademark, Marca Registrada, Marque Deposee. Trademarks (including Delta and Delta logo) are registered, or registrations are applied for, in countries of the world served by Delta Air Lines, Inc.

© 2003. Delta SkyMiles membership is subject to the terms and conditions set forth in the current Delta SkyMiles Membership Guide and program Rules Brochure. The Delta SkyMiles® Options Credit Card is issued by American Express Centurion Bank. ©2003 American Express Centurion Bank. All rights reserved.

¹ The accounts from which you transfer the entire balance will not be closed automatically after the transfers have been completed. It is your responsibility to close these accounts, if you choose. Any purchase made with the Card will receive the promotional APR for six months from the date that the Card account is opened.

² 1,000 bonus SkyMiles will be awarded after you use your Card for the first time. Please allow 6 to 8 weeks for your bonus SkyMiles to appear in your Delta SkyMiles account. This offer is valid to first-time Delta SkyMiles Cardmembers only. You may be permitted to have more than one Delta SkyMiles Credit Card account; however, you are eligible to receive welcome bonus miles for only one Card account.

³ Offer applies to qualifying Delta, Delta Connection,® Delta Shuttle, or Song™ flights taken with the purchase of a fare that is eligible for frequent flyer mileage credit. Offer applies to Delta Vacations® packages but not other all-inclusive packages.

⁴ Underwritten by AMEX Assurance Company, Administrative Office, Green Bay, WI. Coverage is subject to the terms, conditions, and exclusions of Policy AX0951.

⁵ Underwritten by AMEX Assurance Company, Administrative Office, Green Bay, WI. Coverage is subject to the terms, conditions, and exclusions of Policy AX0953.

⁶ When you use the American Express Card, you will not be held responsible for unauthorized charges made online.

⁷ Not all services are available in all Travel Service locations and are subject to local laws and cash availability.

⁸ We may send you e-mail messages with important information about your account and offers that may be suited to your needs. Please visit the American Express Privacy Statement at www.americanexpress.com/privacy for more details and to set your e-mail preferences.

# EXHIBIT C

# AGREEMENT BETWEEN DELTA SKYMILES® OPTIONS CREDIT CARDMEMBER
## AND AMERICAN EXPRESS CENTURION BANK

### Welcome to American Express Cardmembership

This document and the accompanying supplement(s) constitute your Agreement. Please read and keep this Agreement. Abide by its terms. When you keep, sign or use the Card issued to you (including any renewal or replacement Cards), or you use the account associated with this Agreement (your "Account"), you agree to the terms of this Agreement. The words "you," "your" and "yours" mean the person who applied for the Account and the person to whom we address billing statements, as well as any person who agrees to be liable on the Account. The "Basic Cardmember" is the person who opened the Account. At your request, we may also issue a Card on your Account to another person (an "Additional Cardmember"). The term "Card" refers to the American Express® Card issued to you, all other Cards issued on your Account, and any other device (such as Account numbers and convenience checks) with which you may access your Account. "We," "our" and "us" refer to American Express Centurion Bank, the issuer of your Account.

### Using the Card

You may use the Card to obtain goods and services from any person who accepts the Card ("Purchase(s)"). You may also use the Card to obtain loans ("Cash Advance(s)") through various means we may make available (e.g., ATM machines) up to the applicable limits on your Account. At our discretion, we may permit you to transfer balances from other accounts to your Account ("Balance Transfer(s)"). At our discretion, we may issue convenience checks that you can use to access your Account. Each convenience check may be used only by you. You may not use convenience checks to pay any amount you owe under this Agreement or to pay any other account you have with us or our affiliates. Transactions you make in response to promotional offers from us will be subject to the terms of the promotion and this Agreement.

All amounts charged to your Account, including Purchases, Cash Advances, Balance Transfers, convenience checks, annual fee(s), if any, any amounts guaranteed by use of the Card, other fees, and any Finance Charges, are "Charges." A convenience check that we identify as having been made payable to cash, to you, or to a bank, brokerage or similar asset account will be treated as a Cash Advance. Any other convenience check and/or a Balance Transfer will be treated as a Purchase, except as otherwise noted. If you make a Purchase or a Balance Transfer, or use a convenience check, that is governed by a promotional offer from us, the Charge will be included in a Promotional Balance, unless we notify you otherwise.

You agree not to let any person use a Card except a Cardmember whose name is on it. You agree to notify us if the Card is lost or stolen, or you suspect that it is being used without your permission. You agree to use the Account only for Purchases, Cash Advances, or Balance Transfers that are lawful and are permitted under this Agreement. We may issue you renewal or replacement Cards before a previously issued Card expires. If you or an Additional Cardmember authorize a third party to bill Charges on a recurring basis to your Account ("Recurring Charge(s)"), we may (but are not required to) provide such third party with your current Account status, Card number and/or expiration date to permit that third party to continue billing your Account. We may take such steps even if your account number changes or if we issue a renewal or replacement Card to you or an Additional Cardmember. To withdraw authorization for a Recurring Charge, you must notify the third party.

### Annual Fee

There is no annual fee for this Account.

### Credit Line

A portion of your credit line may be available to you for Cash Advances up to your Cash Advance limit. We may, at any time and in our sole discretion, increase and/or decrease your credit line and Cash Advance limit. We may limit Charges at an automated teller machine ("ATM") to the lesser of (i) a total of $1,000 in any seven-day period, or (ii) the remaining amount of the Cash Advance limit on your Account; and we may impose additional limits at our sole discretion (in addition to any limits imposed by the ATM's owner). Your billing statements will show your credit line and Cash Advance limit and the unused portions of such line and limit as of the statement date. You agree to manage your Account so that your balance for Cash Advances (including fees and Finance Charges) will not exceed the Cash Advance limit and your overall balance (including fees and Finance Charges) will not exceed your credit line. You agree to pay us, immediately upon request, the amount of any balance on your Account in excess of any applicable credit line or limit. We reserve the right to decline any attempted

Charge, even if the Charge would not cause you to exceed your credit line or limit.

We are not responsible for any losses or other consequences if a transaction on your Account is not approved for any reason, even if you have sufficient credit available. Except as otherwise required by applicable law, we will not be responsible if any merchant refuses to honor the Card or for any other problem you may have with a merchant.

### Promise to Pay

You promise to pay all Charges, including Charges incurred by Additional Cardmembers, on your Account. This promise includes any Charge for which you or an Additional Cardmember indicated an intent to incur the Charge, even if you or the Additional Cardmember have not signed a charge form or presented the Card. You also promise to pay any Charge incurred by anyone that you or an Additional Cardmember let use the Card, even though you have agreed not to let anyone else use the Card.

### Status of and Responsibility for Additional Cardmembers

Additional Cardmembers do not have accounts with us. Instead, they are authorized users on your Account, and the Cards issued to them may be canceled by you or us at any time. You must notify us to revoke an Additional Cardmember's permission to use your Account. You are responsible under this Agreement for all use of your Account by the Additional Cardmembers, and by anyone else you or an Additional Cardmember lets use the Card, and the Charges they incur will be billed to you. You have this responsibility even if you did not intend for an Additional Cardmember, or other person, to use the Card for any transactions.

An Additional Cardmember is not liable for Charges incurred by the Basic Cardmember or by other Additional Cardmembers. However, by each use of the Additional Card to incur Charges, the Additional Cardmember indicates his or her agreement to pay us for the Charge if you fail to or refuse to pay it, and we may, at our discretion, pursue Additional Cardmembers for payment of Charges they incur or authorize. You authorize us to provide Account information to Additional Cardmembers and to discuss the Account with them. You agree to notify each Additional Cardmember, at the time he or she becomes an Additional Cardmember, that we may receive, record, exchange and use information about him or her in the same manner we do with information about you, as described below in the CONSUMER REPORTS, TELEPHONE MONITORING/RECORDING, and SUSPENSION/CANCELLATION sections of this Agreement.

### Billing Statements/Minimum Amount Due

You must notify us immediately of any change in the mailing or e-mail address to which we send billing statements or notices that a billing statement has been posted ("Billing Address"). If you wish a Billing Address change to apply to more than one account you maintain with us, you must tell us. You agree that we may also update your Billing Address if we receive information that your Billing Address has changed or is incorrect.

The "New Balance" appears on your billing statement. To determine the New Balance, we begin with the outstanding balance on your Account at the beginning of each billing period, called the "Previous Balance" on the billing statement. We add any Charges, subtract any credits or payments credited as of that billing period, and make other applicable adjustments.

Each billing statement will reflect a Minimum Amount Due. Payment is due by the time and date shown and in the manner prescribed on the statement. To calculate the Minimum Amount Due (which will be rounded to the nearest whole dollar if greater than $15), we will add together the following:

(1) any amount past due;

(2) the greater of
- 1/50th of the New Balance on your billing statement (for purposes of this calculation we exclude from the New Balance any over-limit fee added to your Account during the billing period),
- the current billed Finance Charges, or
- $15 (or the New Balance if it is less than $15); and

(3) any over-limit fee added to your Account during the billing period.

(4) At our option, we may also include in the Minimum Amount Due all or part of other fees incurred during the billing period and any part of the New Balance in excess of your credit line.

The Minimum Amount Due will not exceed the New Balance. You may pay more than the Minimum Amount Due, up to the entire outstanding balance, at any time. Any increase or decrease in any Daily Periodic Rate may increase or decrease the amount of your Minimum Amount Due.

### Payments

All payments must be sent to the payment address shown on your billing statement and must include the remittance coupon from your billing statement. You must pay us in U.S. currency, with a single draft or check drawn on a U.S. bank and payable in U.S. dollars, or with a negotiable instrument payable in U.S. dollars and clearable through the U.S. banking system, or through an electronic payment method clearable through the U.S. banking system. Your Account number must be included on or with all payments. If we decide to accept a payment made in a foreign currency, you authorize us to choose a conversion rate that is acceptable to us to convert your remittance into U.S. currency, unless a particular rate is required by law.

Payments conforming to the above requirements that we receive no later than the hour specified on your billing statement will be credited to your Account as of the day received; payments conforming to the above requirements that we receive after the hour specified on your billing statement will be credited to your Account as of the following day. If payment does not conform to the requirements stated above, crediting may be delayed. If this happens, additional Charges may be imposed. We may accept late payments, partial payments or any payments marked as being payment in full or as being settlement of any dispute without losing any of our rights under this Agreement or under the law. Our acceptance of any such payments does not mean we agree to change this Agreement in any way. You agree that an acceptance of such payments will not operate as an accord and satisfaction without our prior express written approval.

*Subject to applicable law, we will apply and allocate payments and credits among balances and Charges on your Account in any order and manner determined by us in our sole discretion.* In most cases, we will apply and allocate payments first to balances at lower **Annual Percentage Rates ("APRs")** and then to higher **APR** balances, and apply Purchase credits first to the balance from which the corresponding debit originated. However, for servicing, administrative, systems or other business reasons, we may apply and allocate payments and credits among balances and to Charges on your Account in some other order or manner that we may determine in our sole discretion. You agree that we have the unconditional right to exercise this discretion in a way that is most favorable or convenient to us.

### Authorization for Electronic Debit to Your Checking Account

We reserve the right to process checks electronically by transmitting the amount of the check, the routing number, account number and check serial number to your financial institution. By submitting a check for payment, you authorize us to initiate an electronic debit from your bank or asset account. If we process your check electronically, your payment may be debited to your bank or asset account the same day we receive your check. Also, if we process your check electronically, you will not receive that canceled check with your bank or asset account statement. If we cannot collect the funds electronically, we may issue a draft against your bank or asset account for the amount of the check.

### Finance Charges

A. Finance Charges begin to accrue for each Charge as of the date it is added to the daily balance, as described below. For Purchases (excluding Balance Transfers or convenience checks), however, no Finance Charges will accrue in any billing period in which the Previous Balance on the statement covering that billing period is zero or a credit balance.

B. The Daily Periodic Rate ("DPR") for Purchases and the DPR for Cash Advances are each based on an **APR**, which may vary. The **APR** for Cash Advances is the Prime Rate plus 14.99%. A DPR is 1/365th of the **APR**. Your DPRs and **APRs** for Purchases appear on the accompanying supplement(s). When an **APR** changes, we apply it to any existing balance subject to that rate.

C. The "Prime Rate" is determined once with respect to each billing period, and applies to the entire billing period. The Prime Rate for billing periods ending in any calendar month is the highest Prime Rate published in the Money Rates section (or successor section) of *The Wall Street Journal* on the 1st or 20th day (or, in each case, if such date is not a business day, the next business day) of the prior calendar month. If *The Wall Street Journal* ceases publication or does not publish the Prime Rate on either of those dates, we may

D. The DPR (and corresponding **APR**) on all balances may increase to the Default Rate if during the Review Period (i) payment of your Minimum Amount Due is not credited by the Payment Due Date in any two billing periods; or (ii) on two or more occasions a payment submitted on your Account is not honored on first presentment; or (iii) you exceed any designated credit limit on your Account three or more times. The "Review Period" is the period, constituting approximately one year, of twelve consecutive billing periods ending with the Closing Date of the current billing period, whether or not you received a statement for each such billing period. If the Default Rate is applied, it will apply to your Account for twelve consecutive billing periods, beginning with the current billing period. The Default Rate will not apply to any balance unless it is higher than the rate that would otherwise apply to that balance. The Default Rate is a DPR of .065 7% which corresponds to an **APR** of 23.99%.

## Average Daily Balance Method for Calculation of Finance Charges

We use the Average Daily Balance method to calculate Finance Charges on your Account. Under this method, we calculate the Finance Charges on your Account by applying the DPR to the Average Daily Balance (as described below) separately for each balance subject to Finance Charges. Different periodic rates may be used for different balances. For example, different DPRs may be applied to separate balances, such as Purchase, Cash Advance, and Promotional Balances. To get the Average Daily Balance for each balance, we (1) take the beginning balance for each day (including unpaid Finance Charges from previous billing periods), (2) add any new transactions, debits, or fees, (3) subtract any payments or credits credited as of that day, and (4) make any appropriate adjustments. *For each day after the first day of the billing period, we also add an amount of interest equal to the previous day's daily balance multiplied by the DPR for the balance.* This gives us the daily balance for the particular balance for that day and the beginning balance for that balance for the next day. If this balance is negative, it is considered to be zero. Then, we add up all the daily balances for each balance for the billing period and divide the total by the number of days in the billing period. This gives us the Average Daily Balance for that balance.

For balances except Cash Advances, the Average Daily Balance for a billing period will be considered to be zero if you paid the New Balance, if any, shown on your previous billing period's statement by the Payment Due Date shown on that statement. If you multiply the Average Daily Balance for each balance by the number of days in the billing period and the DPR for that balance, the result will be the Finance Charge assessed on that balance, except for variations caused by rounding. The total Finance Charge for the billing period is calculated by adding the Finance Charges assessed on all balances of the Account. *This method of calculating the Average Daily Balance and Finance Charge results in daily compounding of Finance Charges.* We may use mathematical formulas which produce equivalent results to calculate the Average Daily Balance, Finance Charge, and related amounts. For example, we may utilize computer programs or other computational methods that are designed to produce mathematically equivalent results while using fewer and/or simpler computational steps than are described in this Agreement.

At our discretion, we may exclude certain categories of debit transactions or fees from the calculation of the daily balances. Unless we elect to use a later date, we add a Charge to the daily balance as follows: We add a Cash Advance or Purchase to the appropriate daily balance as of the date of request or the transaction date on the billing statement. We add a convenience check to the appropriate daily balance as of the date of first deposit. We add a Balance Transfer other than through a convenience check to the appropriate daily balance as of the date of the request. We add periodic Finance Charges to the daily balance as described above. We add any other Charge to the appropriate daily balance as of the date of the transaction.

Periodic Finance Charges are added to the outstanding balance at the end of the billing period for which Finance Charges are calculated. In any such billing period, we will impose a minimum **Finance Charge of $0.50**, which will be added to the balance with the highest **APR** unless, for our convenience and in our sole discretion, we choose to add it to a balance with a lower **APR**.

### Late Fees

We may assess a Late Fee if a payment of at least the Minimum Amount Due is not credited to your Account by the Payment Due Date. The amount of the Late Fee depends on the amount of the Previous Balance on the statement on which the Late Fee appears, as follows:

| | |
|---|---|
| Less than $100 | $15 |
| $100 to $1000 | $29 |
| Greater than $1000 | $35 |

### Other Fees

We may charge the following fees to your Account, subject to applicable law. Except as otherwise noted, these fees will be added to the Purchase Balance.

1. *Dishonored Payments*—We may charge a fee of $29 whenever any check, similar instrument, or electronic payment order that we receive as payment on your Account is not honored upon first presentment.

   If a Card is presented in connection with cashing a check at an American Express Travel Service Office or other authorized location and the check is not honored, we may charge a fee of $29. (We will also add a Charge to the Cash Advance balance of your Account in the amount of the check that was not honored.)

2. *Copies of Statements and Convenience Checks*—We may charge a fee of $3 for each billing period for which a copy of a billing statement is requested, and for each request for a copy of a convenience check drawn on your Account. We will not charge this fee for any request for a copy of any of the billing statements for the three billing periods immediately prior to the request.

3. *Account Re-opening Fee*—We may charge a re-opening fee of $25 if your Account is canceled for any reason and you request reinstatement and such request is honored.

4. *Wire Transfers*—We may charge a fee of $15 each time a wire transfer from your Account is initiated and authorized.

5. *Stop Payment Orders*—We may charge a fee of $29 each time we receive a request to stop payment on a convenience check drawn on your Account.

6. *Over-limit Fee*—We may charge a fee of $29 in each billing period the New Balance on your statement exceeds your credit line.

7. *Convenience Check Usage/Balance Transfer Transaction Fee*—We may charge a transaction fee for each Balance Transfer and each convenience check drawn on your Account. This fee, a **FINANCE CHARGE**, will be 3% of the amount transferred, with a minimum of $5 and a maximum of $50. This fee will be added to the same Purchase or Cash Advance balance as the convenience check transaction or Balance Transfer.

8. *ATM Fee*—We will impose a fee each time a Card is used to obtain cash or any other services from an ATM. This fee will be 3% of the amount of the cash withdrawn or other services obtained (including any additional fee imposed for use of the ATM by its operator), with a minimum of $5. This fee will be added to the Cash Advance balance.

### Suspension/Cancellation

In addition to any other actions we may take under this Agreement, we may suspend or cancel your Account or any feature offered in connection with your Account. We may reduce your credit line or cash advance limit (including to a level below your outstanding balance), and/or we may suspend or cancel the authorization of any Additional Cardmember to make Charges to your Account, at our sole discretion at any time, with or without cause, whether or not your Account is in default, and without giving you notice, subject to applicable law. Any such action on our part will not cancel your obligation to pay all Charges due on your Account under the terms of this Agreement in effect at the time of such action or as subsequently amended, and you agree to pay us all such Charges despite any such action. We may advise third parties who accept the Card that the Card(s) issued to you and/or Additional Cardmembers have been canceled. If we cancel the Card or it expires, you may no longer use it and you must destroy it or return it to us or, if we request, to a third party. If you want to cancel the Account or any Additional Cards, you must notify us and destroy the Card(s).

If we agree to reinstate your Account after a cancellation, the new Agreement we send you (or, if we do not send you a new Agreement, this Agreement as it may be amended) will govern your reinstated Account. When we reinstate your Account, we may reinstate any Additional Cards issued in connection with your Account, and bill you the applicable annual fee(s).

### Default

We may consider your Account to be in default at any time if you fail to pay us any amount when it is due, or if you breach any other promise or obligation under this Agreement.

Subject to applicable law, we may also consider your Account to be in default at any time if any statement made by you to us in connection with this Account or any other credit program was false or misleading; if you breach any promise or obligation under any other agreement that you may have with us or with any of our affiliates; if we receive information indicating that you are bankrupt, intend to file bankruptcy, or are unable to pay your debts as they become due; or we receive information leading us to conclude that you are otherwise not

able to pay or on information contained in consumer reports. and in our discretion we may consider the amount of debt you are carrying compared to your resources or any other of your credit characteristics, regardless of your performance on this Account. We may also consider your Account in default in the event of your death.

In the event of your default, and subject to any limitations or requirements of applicable law, we may require payment of a portion of your outstanding balance greater than the Minimum Amount Due, declare the entire amount of your obligations to us immediately due and payable, and/or suspend or cancel your Account and/or any feature that may be offered in connection with the Account. You agree to pay all reasonable costs, including reasonable attorneys' fees, incurred by us (1) in connection with the collection of any amount due on your Account, whether or not any arbitration, litigation, or similar proceedings are initiated; and (2) in reasonably protecting ourselves from any loss, harm, or risk relating to any default on your Account.

### Transactions Made in Foreign Currencies

If you incur a Charge in a foreign currency, it will be converted into U.S. dollars on the date it is processed by us or our agents. Unless a particular rate is required by applicable law, you authorize us to choose a conversion rate that is acceptable to us for that date. Currently, the conversion rate we use for a Charge in a foreign currency is no greater than (a) the highest official conversion rate published by a government agency, or (b) the highest interbank conversion rate identified by us from customary banking sources, on the conversion date or the prior business day, in each instance increased by 2%. This conversion rate may differ from rates in effect on the date of your Charge. Charges converted by establishments (such as airlines) will be billed at the rates such establishments use.

### Benefits and Services

Subject to applicable law, we have the right to add, modify or delete any benefit, service, or Feature that may accompany your Account at any time and without notice to you.

### Arbitration

*Purpose:* This Arbitration Provision sets forth the circumstances and procedures under which Claims (as defined below) may be arbitrated instead of litigated in court.

*Definitions:* As used in this Arbitration Provision, the term "Claim" means any claim, dispute or controversy between you and us arising from or relating to your Account, this Agreement, the Electronic Funds Transfer Services Agreement, and any other related or prior agreement that you may have had with us, or the relationships resulting from any of the above agreements ("Agreements"), including the validity, enforceability or scope of this Arbitration Provision or the Agreements. For purposes of this Arbitration Provision, "you" and "us" also includes any corporate parent, or wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns, any purchaser of any accounts, all agents, employees, directors and representatives of any of the foregoing, and other persons referred to below in the definition of "Claims." "Claim" includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims and claims based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity. "Claim" also includes claims by or against any third party using or providing any product, service or benefit in connection with any account (including, but not limited to, credit bureaus, third parties who accept the Card, third parties who use, provide or participate in fee-based or free benefit programs, enrollment services and rewards programs, credit insurance companies, debt collectors and all of their agents, employees, directors and representatives) if and only if, such third party is named as a co-party with you or us (or files a Claim with or against you or us) in connection with a Claim asserted by you or us against the other. The term "Claim" is to be given the broadest possible meaning that will be enforced and includes, by way of example and without limitation, any claim, dispute or controversy that arises from or relates to (a) any of the accounts created under any of the Agreements, or any balances on any such accounts, (b) advertisements, promotions or oral or written statements related to any such accounts, goods or services financed under any of the accounts or the terms of financing, (c) the benefits and services related to Cardmembership (including fee-based or free benefit programs, enrollment services and rewards programs), and (d) your application for any account. We shall not elect to use arbitration under the Arbitration Provision for any Claim that you properly file and pursue in a small claims court of your state or municipality so long as the Claim is individual and pending only in that court.

*Initiation of Arbitration Proceeding/Selection of Administrator:* Any Claim shall be resolved, upon the election by you or us, by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organization to which the Claim is referred in

**Exhibit C, Page 21**

effect at the time the Claim is filed. Claims shall be referred to either the National Arbitration Forum ("NAF") or the American Arbitration Association ("AAA"), as selected by the party electing to use arbitration. If a selection by us of one of these organizations is unacceptable to you, you shall have the right within 30 days after you receive notice of our election to select either of the other organizations listed to serve as arbitration administrator. For a copy of the procedures, to file a Claim or for other information about these organizations, contact them as follows:

- The NAF at P.O. Box 50191, Minneapolis, MN 55404; website at www.arbitration-forum.com.
- JAMS at 1920 Main Street, Suite 300, Los Angeles, CA 92614; website: www.jamsadr.com.
- AAA at 335 Madison Avenue, New York, NY 10017; website: www.adr.org.

*Significance of Arbitration:* IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM, OR TO HAVE THEIR CLAIMS RESOLVED EXCEPT AS PROVIDED FOR IN THE CODE OF PROCEDURES OF THE NAF, JAMS OR AAA, AS APPLICABLE (THE "CODE"). FURTHER, YOU AND WE WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. NOTE THAT OTHER RIGHTS THAT YOU OR WE WOULD HAVE IF YOU WENT TO COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION.

*Restrictions on Arbitration:* If either party elects to resolve a Claim by arbitration, that Claim shall be arbitrated on an individual basis. *There shall be no right or authority for any Claims to be arbitrated on a class action basis or on bases involving Claims brought in a purported representative capacity on behalf of the general public, other Cardmembers or other persons similarly situated.* The arbitrator's authority to resolve Claims is limited to Claims between you and us alone, and the arbitrator's authority to make awards is limited to awards to you and us alone. Furthermore, Claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with Claims brought by or against someone other than you, unless agreed to in writing by all parties.

*Arbitration Procedures:* This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16, as it may be amended (the "FAA"). The arbitration shall be governed by the applicable Code, except that (to the extent enforceable under the FAA) this Arbitration Provision shall control if it is inconsistent with the applicable Code. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitations and shall honor claims of privilege recognized at law and, at the timely request of either party, shall provide a brief written explanation of the basis for the decision. The arbitration proceeding shall not be governed by any Federal or state rules of civil procedure or rules of evidence. Either party may submit a request to the arbitrator to expand the scope of discovery under the applicable Code. The party submitting such a request must provide a copy to the other party, who may submit objections to the arbitrator with a copy of the objections provided to the requesting party, within fifteen (15) days of receiving the requesting party's notice. The granting or denial of such a request will be in the sole discretion of the arbitrator, who shall notify the parties of his/her decision within twenty (20) days of the objecting party's submission. The arbitrator shall take reasonable steps to preserve the privacy of individuals, and of business matters. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator's decision will be final and binding, except for any right of appeal provided by the FAA. However, any party can appeal that award to a three-arbitrator panel administered by the same arbitration organization, which shall consider anew any aspect of the initial award objected to by the appealing party. The appealing party shall have thirty (30) days from the date of entry of the written arbitration award to notify the arbitration organization that it is exercising the right of appeal. The appeal shall be filed with the arbitration organization in the form of a dated writing. The arbitration organization will then notify the other party that the award has been appealed. The arbitration organization will appoint a three-arbitrator panel that will conduct an arbitration pursuant to its Code and issue its decision within one hundred and twenty (120) days of the date of the appellant's written notice. The decision of the panel shall be by majority vote and shall be final and binding.

*Location of Arbitration/Payment of Fees:* Any arbitration hearing that you attend shall take place in the federal judicial district of your residence. You will be responsible for paying your share, if any, of the arbitration fees (including filing, administrative, hearing and/or other

fees) deducted by the Code to the extent that such fees do not exceed the amount of the filing fees you would have incurred if the Claim had been brought in the state or federal court closest to your billing address that would have jurisdiction over the Claim. We will be responsible for paying the remainder of any arbitration fees. At your written request, we will consider in good faith making a temporary advance of all or part of your share of the arbitration fees for any Claim you initiate as to which you or we seek arbitration. You will not be assessed any arbitration fees in excess of your share if you do not prevail in any arbitration with us.

*Continuation:* This Arbitration Provision shall survive termination of your accounts as well as voluntary payment of the Account balance in full by you, any legal proceeding by you or us to collect a debt owed by the other, any bankruptcy by you or us, and any sale by us of your Account (and in the case of sale, its terms shall apply to the buyer of any of your Account). If any portion of this Arbitration Provision is deemed invalid or unenforceable under any principle or provision of law or equity, it shall not invalidate the remaining portions of this Arbitration Provision or the Agreement, each of which shall be enforceable regardless of such invalidity.

### Waiver

Our failure to exercise any of our rights under this Agreement, our delay in enforcing any of our rights, or our waiver of our rights on any occasion, shall not constitute a waiver of such rights on any other occasion.

### Consumer Reports

You authorize us to request consumer reports about you, to make whatever credit investigations we deem appropriate, to obtain and exchange any information we may receive from consumer reports and other sources, and to use such information for any purposes, subject to applicable law.

You authorize us to furnish information concerning your Account to consumer reporting agencies, or others, subject to applicable law. If you believe information we have furnished about your Account to a consumer reporting agency is inaccurate, you should write to us at: American Express Credit Bureau Unit, P.O. Box 7871, Ft. Lauderdale, FL 33329-7871 and identify the specific information you believe is inaccurate.

You are hereby notified that information about your Account that may have a negative impact on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

### Telephone Monitoring/Recording

You agree that from time to time we may monitor and/or record telephone calls between you or Additional Cardmembers and us to assure the quality of our customer service or as required by applicable law.

### Use of Card at Federal Government Agencies

American Express has entered into contracts that enable the Card to be accepted at certain federal government agencies and departments ("Agencies"). As with Card transactions at commercial establishments, when you choose to use your Card at an Agency, certain Charge information is necessarily collected by us. Charge information from Card transactions at Agencies may be used for processing Charges and payments, billing and collections activities and may be aggregated for reporting, analysis and marketing activities. Additional "routine uses" of Charge information by Agencies are published periodically in the Federal Register.

### Notices

Any notice given by us shall be deemed given when deposited in the U.S. mail, postage prepaid, addressed to you at the latest Billing Address shown on our records.

### Changing this Agreement/Assignment of this Agreement

We may change the terms of or add new terms to this Agreement at any time, in accordance with applicable law. We may apply any changed or new terms to any then-existing balances on your Account as well as to future balances. We may also sell, transfer or assign this Agreement and the Account at any time without notice to you. You may not sell, assign or transfer your Account or any of your obligations under this Agreement.

### Assignment of Claims

In the event you dispute a Charge and we credit your Account for all or part of such disputed Charge, we automatically succeed to, and you are automatically deemed to assign and transfer to us, any rights and claims (excluding tort claims) that you have, had or may have against any third party for an amount equal to the amount we credited to your Account. After we make such credit, you agree that without our consent you will not pursue any claim against or reimbursement from such third party for the amount that we credited to your Account, and that you will cooperate with us if we decide to pursue the third party for the amount credited.

This Agreement and your Account, and all questions about their legality, enforceability and interpretation, are governed by the laws of the State of Utah (without regard to internal principles of conflicts of law), and by applicable federal law. We are located in Utah, hold your Account in Utah, and entered into this Agreement with you in Utah. AMERICAN EXPRESS CENTURION BANK

*David E. Poulsen*

David E. Poulsen, President/CEO

**TO AMERICAN EXPRESS CARDMEMBERS IN THE UNITED STATES AND ITS TERRITORIES.**

**YOUR BILLING RIGHTS—KEEP THIS NOTICE FOR FUTURE USE.** This notice contains important information about your rights and our responsibilities under the "Fair Credit Billing Act."

### Notify Us in Case of Errors or Questions About Your Account Statement

If you think your statement is wrong or if you need more information about a transaction on your statement, write us on a separate sheet of paper at the address for billing inquiries listed on your statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can also telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your Account statement automatically from your savings, checking or other account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

### Your Rights and Our Responsibilities After We Receive Your Written Notice

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the statement was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including Finance Charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your statement that are not in question.

If we find that we made a mistake on your statement, you will not have to pay any Finance Charges related to any questioned amount. If we did not make a mistake, you may have to pay Finance Charges, and you will have to make up any missed payments on the questioned amounts. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your statement, and we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we cannot collect the first $50 of the questioned amount, even if your statement was correct.

### Special Rule for Credit Card Purchases

If you have a problem with the quality of property or services that you purchased with the Card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations to this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**Note for Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

Exhibit C, Page 22

3

# AGREEMENT REGARDING
## THE ACCUMULATION OF DELTA SKYMILES®
IN CONNECTION WITH YOUR
**DELTA SKYMILES OPTIONS CREDIT CARD**
**FROM AMERICAN EXPRESS**

You will receive one Delta SkyMile ("SkyMile") for every two (2) U.S. dollars of "Eligible Spending" (as defined below) on your Delta SkyMiles Options Credit Card from American Express (the "Card Account"), subject to the terms set forth below. SkyMiles will be credited to your SkyMiles account after the billing period in which the Eligible Spending occurs.

You will receive one-half additional SkyMile for each U.S. dollar of Eligible Spending for "Delta Purchases" (as defined below) subject to the terms set forth below. SkyMiles will not be awarded for Eligible Spending in excess of $60,000 per year of Cardmembership, not including bonuses; however, one-half "bonus" SkyMile for each U.S. dollar of Eligible Spending for Delta Purchases will continue to be awarded above this limit.

You may be permitted to have more than one Delta SkyMiles Card Account, however, you are eligible to receive welcome bonus points for only one Card Account. If you have previously closed a Delta SkyMiles Options Credit Card Account you are not eligible for welcome bonus points if you open another Delta SkyMiles Options Credit Card Account.

SkyMiles are subject to the Delta SkyMiles Membership Guide and Program Rules, and you should refer to that document for details on redemption of SkyMiles, Delta's right to change program terms, and other conditions which may apply.

Your account must be active (i.e., not canceled) for any given billing period to earn SkyMiles.

"Eligible Spending" includes purchases of goods or services, which purchases have not been returned or otherwise rescinded, and are not subject to a credit; it does NOT include fees, Finance Charges, Cash Advances (including the use of checks, line activators, automated teller machines, or other means of accessing your account), Balance Transfers, or adjustments to your account. We reserve the right not to award any SkyMiles for transactions we determine are not Charges made with the good faith intention of consuming the item charged.

For the purpose of this Agreement, "Delta Purchases" are Delta ticket purchases, Delta Vacation® packages and other Delta services, excluding Delta air travel purchases which are a part of an all-inclusive air/sea tour package.

We reserve the right to change these terms and conditions at any time, subject to applicable law. Terms used have the meanings assigned to them in the AGREEMENT BETWEEN DELTA SKYMILES OPTIONS CREDIT CARDMEMBER AND AMERICAN EXPRESS CENTURION BANK.

## AGREEMENT BETWEEN
## DELTA SKYMILES®
## OPTIONS CREDIT CARDMEMBER
## AND AMERICAN EXPRESS
## TRAVEL RELATED SERVICES COMPANY, INC.
## CONCERNING ELECTRONIC
## FUND TRANSFER SERVICES

ONCE YOU ENROLL IN PAY BY COMPUTER, PAY BY PHONE OR ANY OTHER AMERICAN EXPRESS ELECTRONIC FUNDS TRANSFER SERVICE (HEREAFTER THE "PROGRAM"), YOU WILL BE SUBJECT TO THIS ELECTRONIC FUNDS TRANSFER AGREEMENT (THE "EFT AGREEMENT").

### Scope of Agreement

This EFT Agreement covers your participation in the Program. In this EFT Agreement, the words "you" and "your" refer to the Basic Cardmember and also include all Additional Cardmembers who have enrolled in the Program. The words "we," "our" and "us" refer to American Express Travel Related Services Company, Inc. The words "your American Express Accounts" refer to your card account governed by your Cardmember Agreement ("Card Account") or any other American Express Accounts that we permit you to enroll in the Program. The words "your Bank Account" refer to the account held by a bank, securities firm or other financial institution from which payment will be made when you make transactions under the Program. The words "your bank" mean the bank, securities firm or other financial institution that holds your Bank Account. The words "other options" refer to electronic payment transfer options and/or other cash access that American Express may make available from time to time, including the option to pay your Account bill electronically using a computer, phone or other device.

Your Account is governed by the Cardmember Agreement that is attached to this EFT Agreement. That agreement and the capitalized terms in it also apply here.

### Payment for Cash Transactions

Each time you initiate a transaction under the Program, you instruct and authorize us or our agent to draw a check or initiate an automated clearing house ("ACH") debit in your name on your Bank Account,

amount of the transaction is the amount of the Account bill you paid or other funds transfer you authorized, plus any applicable fees or charges. We may charge a fee of $29 for each check or ACH debit drawn by us or our agent in connection with the Program that is not honored upon first presentment, subject to applicable law. Your bank may also assess its customary charge for such items, if any.

### Dishonored Requests for Payments

If any check or ACH debit drawn by us or our agent in connection with the Program is not honored by your bank, we have the right to charge the amount of any such transaction, and the dishonored payment fee referred to above, to the Card Account or to collect the amount from you. If this happens, we may cancel your right to participate in the Program.

For certain Bank Accounts, you may have a separate agreement with us or with a participating bank, securities firm, or other financial institution that allows a line of credit to be accessed in the event that your Bank Account contains insufficient funds to make payment to us. You should refer to the appropriate agreement relating to that line of credit for the terms and conditions that govern its use.

### Liability for Unauthorized Transactions and Advisability of Prompt Reporting

You must tell us AT ONCE if you believe a transaction under the Program has been made without your authorization. Telephoning is the best way of minimizing possible losses. If a transaction was unauthorized, and within two days after you learn about it you notify us that the transaction was unauthorized, we will not hold you liable for that transaction. In any event, even if you fail to notify us, your liability for any unauthorized transaction or series of related unauthorized transactions shall not exceed $50. If you believe that someone has transferred or may transfer money from your Bank Account without permission, call: 1-800-528-4800 (within U.S.) or 1-336-393-3211 (outside U.S.) anytime, or write: American Express Credit Department, P.O. Box 53850, Phoenix, Arizona 85072-3850.

### Our Liability for Improper Transactions or Payments

If a transaction is not completed as you have directed or if we do not complete a transfer to or from your Bank Account on time in the correct amount, we will research and correct it as necessary, once you advise us. We will also reimburse you for your actual losses or damages, if any, caused by our error. However, there are some exceptions. We will not be liable to you in the following instances:

• ii, through no fault of ours, your Bank Account does nor or did not contain enough money to complete the transaction or the transfer would exceed an established credit limit;
• if the funds in your Bank Account are or were at the time of the attempted transaction subject to legal process or other encumbrance restricting the transaction;
• if circumstances beyond our control (such as fire or flood) prevent or prevented the transaction, despite reasonable precautions that we have taken;
• if a technical malfunction known to you prevented the transaction;
• or any other exceptions stated in this EFT Agreement.

### Business Day

For purposes of this EFT Agreement, our business days are Monday through Friday. Holidays are not included.

### Arbitration

The Card Account is governed by the Cardmember Agreement contained herein. The Arbitration provision contained within that agreement applies to this EFT Agreement. Please refer to that provision as you read this EFT Agreement.

### Privacy

Electronic funds transfers you initiate pursuant to this EFT Agreement are covered by the American Express Privacy Policy, a copy of which was given to you together with your American Express Card. To view our Privacy Policy online, please visit americanexpress.com.

### How to Contact Us

If for any reason you wish to contact us about the Program, about your participation in the Program, or about transactions relating to the Program, write or call us as follows:

Address: American Express Travel Related Services Company, Inc., Express Cash Operations, P.O. Box 27084, Greensboro, NC 27425

Telephone: 1-800-CASH-NOW, 24 hours a day, seven days a week

### In Case of Errors or Questions About Your Transactions

Write or call us at the number or address given above as soon as you can if you think your statement or receipt is wrong or if you need more information about a transaction listed on your statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.

1. Tell us your name and Account number.
2. Describe the error or the transaction you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
3. Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days* from the date you notified us. We will tell you the results of our investigation within 10 business days* after we hear from you and we will correct any error promptly. If we need more time, however, we may take up to 45 calendar days to investigate your complaint or question. If we decide to do this we will assure that your bank recredits your Bank Account within 10 business days* for the amount you think is in error, so that you will have the use of the money

during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days* following your oral notification, we may not recredit your Bank Account.

If notification of an error is received within 30 calendar days after your Bank Account is opened, we will have 20 business days to provide you with the results of our investigation and correct any error, and 90 days to complete the investigation.

If we determine that there was no error, we will send you a written explanation within three business days after we finish our investigation. Upon your request we will provide you with copies of the documents that we used in our investigation. If we have provisionally recredited your Bank Account during the investigation and determine that there was no error, we will notify you of the date on which we will redebit your Bank Account, and the amount to be debited. You should make certain that your Bank Account contains sufficient funds to cover this debit. If it does not, we have the right to charge such amount to the Account or to collect the amount from you. If this happens, we may cancel your right to participate in the Program.

### Termination

We, or any bank or financial institution participating in the Program, may add to or remove from the Program any or all ATMs or extend or limit the services provided at any location without notifying you beforehand. In addition, we may discontinue the Program at any time. Your right to participate in the Program will be terminated or suspended if the Card Account is cancelled or suspended, if you cancel the authorization you have given your bank to directly charge checks to your Bank Account, if the Bank Account from which payment will be made when you make transactions under the Program is closed to withdrawal transactions by us or our agents, if your participation in the Program is inactive for 18 consecutive months or more, or if the Card Account is no longer in good standing.

In addition to the foregoing, we may revoke your right to participate in the Program, at any time, at our sole discretion, with or without cause, subject to applicable law. If we do so, we will send you written notice, but we may not send you the notice until after the revocation. We also have the right to deny authorization for any requested transaction, at any time, at our sole discretion, with or without cause, and without giving you notice, subject to applicable law. You may terminate your participation in the Program but you must do so by writing to us at the address disclosed in the Section of this EFT Agreement entitled "HOW TO CONTACT US."

### Prior Agreements and Assignments

This EFT Agreement supersedes all prior agreements you may have with us relating to the Program. We have the right to assign this EFT Agreement to a subsidiary or affiliate company at any time.

AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.

Gordon A. Smith, President, Consumer Cardmember Since 1984

### Note for Massachusetts Residents

**General Disclosure Statement.** Any documentation provided to you which indicates that an electronic funds transfer was made shall be admissible as evidence of such transfer and shall constitute prima facie proof that such transfer was made.

The initiation by you of certain electronic funds transfers from your Bank Account will, except as otherwise provided in this EFT Agreement, effectively eliminate your ability to stop payment of the transfer. UNLESS OTHERWISE PROVIDED IN THIS EFT AGREEMENT, YOU MAY NOT STOP PAYMENT OF ELECTRONIC FUNDS TRANSFERS; THEREFORE, YOU SHOULD NOT EMPLOY ELECTRONIC ACCESS FOR PURCHASES OR SERVICES UNLESS YOU ARE SATISFIED THAT YOU WILL NOT NEED TO STOP PAYMENT.

**Disclosure of Account Information to Third Parties.** If you give us your written authorization to disclose information about you, your Account or the transactions that you make to any person, that authorization shall automatically expire 45 days after we receive it.

**Optional Limit on Obtaining Cash.** You have the option to request that we limit the total amount of cash that you may obtain from ATMs in a single day to $50. If you elect this option we will take all reasonable steps to comply with your request.

*For Massachusetts residents: 10 calendar days instead of business days.

## THE PURCHASE PROTECTION PLAN

### Description of Coverage

**How the Purchase Protection Plan Works.** When an American Express® Cardmember charges a covered purchase with his or her Card Account,[1] the Purchase Protection Plan protects that item for 90 days from the date of purchase if it is stolen or accidentally damaged, including vandalism. The coverage is limited to $1,000 per Occurrence, up to $50,000 per Cardmember Account per policy year, and is in EXCESS of other sources of indemnity.

Exhibit C, Page 23

## How You Benefit

- Items of personal property purchased worldwide with the Card are covered, including gifts purchased for others.
- As a Cardmember, your purchase is covered for 90 days from the date of purchase when you charge any portion of the price of the purchased item with your Card Account.² You will only be reimbursed for the amount charged to your Card.
- The Purchase Protection Plan provides coverage for up to $1,000 per Occurrence of theft or accidental damage, including vandalism, ("Occurrence"), not to exceed $50,000 per Cardmember Account per policy year.
- The program administrator will decide whether to have the item repaired or replaced, or to reimburse you (cash or credit') up to the amount charged to the Card, and not to exceed the original purchase price.³ The Purchase Protection Plan does not reimburse for shipping and handling expenses or installation, assembly, or other service charges.

### Who is Covered

You are covered under this Plan and coverage remains effective as long as you are a U.S. resident Cardmember, that is, the American Express Card has been issued in your name, and you maintain your Permanent Residence in the 50 United States of America, the District of Columbia, Puerto Rico, or the U.S. Virgin Islands.⁵

Your Permanent Residence is considered your primary dwelling.

### Key Terms to Know

- Benefits will not be paid if, on the date of Occurrence, on the date of claim filing, or on the date of would-be claim payment any amount due on your Card Account is unpaid for one or more billing cycle(s) or your Card Account is canceled.⁶
- You must provide proof of purchase and satisfactory proof of the theft, accidental damage, including vandalism, while coverage is in effect to qualify for payment under the Purchase Protection Plan. Remember to keep all your American Express charge receipts, original store receipts, and damaged items.
- Coverage under the Purchase Protection Plan is EXCESS; this means that if, at the time of Occurrence, you have other valid and collectible insurance or indemnity – such as but not limited to homeowner's or renter's insurance – the Purchase Protection Plan will cover that amount not covered by such other insurance or indemnity, up to the limits of the Purchase Protection Plan.
- Product rebates, discounts or money received from lowest price comparison programs will be deducted from the original cost of the item.

### Purchases Not Covered

- travelers checks, tickets of any kind, negotiable instruments (such as gift certificates, gift cards and gift checks), cash or its equivalent;
- animals or living plants;
- consumable or perishable items with limited life spans (such as, but not limited to, perfume, light bulbs, batteries);
- at the time of purchase, used, rebuilt, refurbished, or remanufactured items;
- if the damaged or stolen item consists of articles in a pair or set, coverage will be limited to no more than the value of any particular part or parts, unless the articles are unusable individually and cannot be replaced individually, regardless of any special value the article(s) may have had as part of a set or collection;
- permanent household and/or business fixtures, including, but not limited to, carpeting, flooring and/or tile;
- business fixtures, including, but not limited to, air conditioners, refrigerators, heaters;
- custom hospital, medical and dental equipment and devices;
- rare stamps or coins;
- antique, previously owned items;
- items purchased for resale, professional, or commercial use;
- items still under installment billing (except those purchased from American Express Merchandise Services);
- motorized vehicles and watercraft, aircraft, and motorcycles or their motors, equipment, parts or accessories; items rented, leased or borrowed for which you will be held responsible.

### Occurrences Not Covered

- items lost or misplaced;
- items stolen from motor vehicles;
- items not reasonably safeguarded by you (for example, unlocked or unattended items stolen from public facilities will not be covered); items stolen from baggage not carried by hand under your personal supervision or under the supervision of a traveling companion known by you;
- items that you damage through alteration (including cutting, sawing, and shaping);

or in the usual course of play (such as, but not limited to, golf and tennis balls);
- Occurrences caused by any of the following: fraud; abuse; natural disaster including, but not limited to, flood, earthquake, tornado or hurricane; war or hostilities of any kind (e.g., invasion, rebellion, insurrection); confiscation by order of any government, public authority, or customs official; risks of contraband; illegal activity or acts; radioactive contamination;
- items lost, damaged, or stolen under the care and control of a third party or common carrier;
- manufacturer's defects;
- items at an unoccupied construction site.

### How to File a Claim

Remember, to insure prompt processing of your claim, you need to report any theft or damage immediately following the date of the Occurrence, including for gifts purchased with the Card. Remember also, you need to retain your receipts and your damaged item (if required) until the claim process is complete.

1. Call toll-free 1-800-322-1277 to report your claim (overseas, call collect at 1-303-273-6498).

   **Note:** *You must report your claim within 30 days from the date of Occurrence.*

2. You may be sent a Purchase Protection Claim Form which you must complete, front and back, sign, and return to the claims office with the following required documents' (keep copies for your own records):
   - the American Express charge receipt;
   - the original itemized store receipt;
   - the insurance declaration forms for your other sources of insurance or indemnity (e.g., homeowner's or renter's insurance);
   - a photograph of and/or repair estimate for the damaged item (damage claims only); and
   - for theft and vandalism claims, a report regarding the stolen or vandalized items must be filed with the appropriate authority before you call to file a claim with the Purchase Protection Plan.
   
   **Note:** *You must return your completed claim form and required documents within 60 days from the date of Occurrence to remain eligible for coverage.*

3. The program administrator will decide whether to have the item repaired or replaced, or to reimburse you (cash or credit') up to the amount charged to the Card, and not to exceed the original purchase price. The Purchase Protection Plan does not reimburse for shipping and handling expenses, or installation, assembly, or other service charges.⁴

   **Note:** *No payment will be made for invalid claims or on any claims not substantiated in the manner required by the Insurer.*

4. For damage claims, you may be required to send in the damaged item(s), at your expense, for further evaluation of your claim.
   **Note:** *If requested, you must send in the damaged item within 30 days from the date of request to remain eligible for coverage.*

### Important Additional Information for You

The benefits provided under the Purchase Protection Plan apply only to you. Only you have any legal or equitable right, remedy, or claim to insurance proceeds and/or damages under or arising from the Purchase Protection Plan.

All reasonable and practical steps must be taken to avoid or lessen any chance of property covered by the Purchase Protection Plan being stolen or damaged.

When a benefit has been paid under the Purchase Protection Plan, the Insurer becomes subrogated, to the extent of such payment, to all your rights and remedies against any responsible party. Upon our request, you must provide us reasonable assistance, including signing documents if necessary, to bring suit in your name.

The Purchase Protection Plan is underwritten by AMEX Assurance Company ("Insurer"), Administrative office, Green Bay, Wisconsin. This document serves only as a description of coverage and is not a policy or contract of insurance; the actual terms, conditions and exclusions of Policy AX0951 ("Policy") govern the Purchase Protection Plan. The Policy has been issued to American Express Travel Related Services Company, Inc. ("American Express"), the Policyholder. This document replaces all existing prior Descriptions of Coverage for the Purchase Protection Plan.

Kenneth J. Ciak, President
AMEX Assurance Company
6726-11-01

Timothy Meehan, Secretary
AMEX Assurance Company

defer card and enrolled in the Membership Rewards program, the cost of a covered product may also be purchased through redemption of a Membership Rewards program redemption certificate.

2. For those eligible and enrolled in the Membership Rewards program, benefits are also paid when the purchased item is received through the redemption of a Membership Rewards program redemption certificate.

3. Credit reimbursement does not apply to New York State residents.

4. For those eligible and enrolled in the Membership Rewards program, payment or credit will not exceed the original assigned value of the personal property received through redemption of a Membership Rewards program redemption certificate up to the stated limits, excluding shipping and handling expenses.

5. Important note for those enrolled in the Membership Rewards program: A Membership Rewards program redemption certificate can only be redeemed by eligible Cardmembers. Benefits will not be paid when a Membership Rewards program redemption certificate has been transferred to non-eligible Cardmembers and/or non-Cardmembers.

6. Does not apply to New York State residents.

7. When eligible and enrolled in the Membership Rewards program, proof of assigned value placed on such property when using a Membership Rewards program redemption certificate if requested, must be submitted in addition to other required documents, if requested.

## THE BUYER'S ASSURANCE PLAN

### Description of Coverage

**How the Buyer's Assurance Plan Works.** When a Cardmember charges the entire cost of a covered product with his or her Card Account¹, the Buyer's Assurance Plan will extend the terms of the original manufacturer's warranty for a period of time equal to the duration of the original manufacturer's warranty, up to one additional year, on warranties of five years or less that are eligible in the U.S.

### How You Benefit

- The Buyer's Assurance Plan mirrors manufacturers' warranties for covered products purchased entirely with your Card Account, up to one additional year.
- When your covered product's manufacturer's warranty expires, the Buyer's Assurance Plan takes effect. The Buyer's Assurance Plan cannot pay more than the actual amount charged to your Card for the item or $10,000, whichever is less (not to exceed $50,000 per Cardmember Account per policy year for all Occurrences combined).
- Coverage is provided for any product malfunction, defect or damage covered by the terms of the product's original warranty ("Occurrence") – at no extra cost.
- For items charged entirely with the Card, the program administrator will decide whether to have the item repaired or replaced, or to reimburse you (cash or credit²), not to exceed the original purchase price. The Buyer's Assurance Plan does not reimburse for shipping and handling expenses or installation, assembly, professional advice, maintenance or other service charges.³
- Where the personal property consists of articles in a pair or set, this Policy shall be liable for one item in the pair or set which form the basis of claim hereunder.
- No product registration or enrollment is required for any covered products, including gifts purchased for others.

### Who is Covered

You are covered under this Plan and coverage remains effective as long as you are a U.S. Resident Cardmember, that is, the American Express Card has been issued to you in your name, and you maintain your Permanent Residence within the 50 United States of America, the District of Columbia, Puerto Rico or the U.S. Virgin Islands.⁴

Your Permanent Residence is considered your primary dwelling place.

### Key Terms to Know

- Benefits will not be paid if, on the date of Occurrence, on the date of claim filing, or on the date of would-be claim payment, any amount due on your Card Account is unpaid for one or more billing cycle(s) or your Card Account is canceled.⁵
- You must provide proof of purchase and satisfactory proof of the covered Occurrence while coverage is in effect to qualify for benefits under the Buyer's Assurance Plan. Remember to keep all your American Express charge receipts, original store receipts, original manufacturers' warranties, and products requiring repair.
- If you purchase an additional service contract or extended warranty with a product which is otherwise eligible under the Buyer's Assurance Plan, and the combined coverage provided by both the original manufacturer's warranty and the purchased service contract does not exceed five years, then the product is eligible for coverage under the Buyer's Assurance Plan. The Buyer's Assurance Plan will

Exhibit C, Page 24

extended protection, the manufacturer's warranty up to one additional year after both the original manufacturer's warranty and the purchased service contract have expired. If, however, you purchase an American Express® Service Plan with a purchase from American Express Merchandise Services, the Buyer's Assurance Plan will apply before the service plan is in effect. If the combined coverage of the original manufacturer's warranty and the purchased service contract exceeds five years then the product purchased is not eligible under the Buyer's Assurance Plan and no coverage applies.

- If you buy an additional service contract or an extended warranty for a computer, computer component or part that already comes with an original U.S. manufacturer's warranty, unless such coverage is provided from, and administered by, the original manufacturer, coverage under the Buyer's Assurance Plan does not apply.

## Products Not Covered

- products not having manufacturers' warranties valid in the U.S.;
- at the time of purchase, used, rebuilt, refurbished or remanufactured items;
- products covered by an unconditional satisfaction guarantee;
- motorized vehicles (such as cars, trucks, motorcycles, boats, airplanes) and their parts, subject to high risk, combustible wear and tear, or mileage stipulations (including batteries, carburetors, pipes, hoses, pistons, brakes, tires, or mufflers);
- motorized devices and their parts used for agriculture, landscaping, demolition or construction;
- motorized devices and their parts which are permanent additions or fixtures to a residential or commercial building;
- business fixtures, including, but not limited to, air conditioners, refrigerators, heaters;
- land or buildings;
- consumable or perishable items;
- animals or living plants;
- one-of-a-kind products which cannot be replaced;
- items purchased for resale, professional, or commercial use;
- items still under installment billing (except those purchased from American Express Merchandise Services); and
- products with manufacturers' warranties, or combined manufacturer's warranties and service plan agreements, lasting in excess of five years.

## Occurrences Not Covered

- any physical damage, including damage as a direct result of natural disaster or a power surge, except to the extent the manufacturer's warranty covers damage;
- Occurrences caused by any of the following: fraud; abuse; war or hostilities of any kind (e.g., invasion, rebellion, insurrection); confiscation by order of any government, public authority, or customs official; risks of contraband; illegal activity or acts; radioactive contamination;
- mechanical failure covered under product recall;
- all Occurrences that take place outside the Buyer's Assurance Plan coverage effective period.

## How to File a Claim

Remember, you need to report any Occurrence immediately, including that for gifts purchased with the Card. Remember also, you need to retain your receipts, the original manufacturer's warranty and the product requiring repair until the claim process is complete. You may also be asked to obtain a repair estimate.

1. Call toll-free 1-800-225-3750 to notify us of your claim (overseas, call collect at 1-303-273-6498).
   **Note:** *You must report your claim within 30 days from the date of Occurrence.*
2. The program administrator will decide whether to have the item repaired or replaced, or to reimburse you (cash or credit?) up to the amount charged to the Card, and not to exceed the original purchase price. The Buyer's Assurance Plan does not reimburse for shipping and handling expenses or installation, assembly, or other service charges.³
   **Note:** *No payment will be made for invalid claims or claims not substantiated in the manner required by the Insurer.*
3. You must return all requested documentation within 60 days from the date of Occurrence to remain eligible for coverage.
4. For some claims, you may be required to send in the damaged product, at your expense, for further evaluation of your claim.
   **Note:** *If requested, you must send in the damaged product within 30 days from the date of request to remain eligible for coverage.*

## Additional Information for You

The benefits provided under the Buyer's Assurance Plan apply only to you and additional Cardmembers on your Account. Only you and those persons have any legal or equitable right, remedy, or claim to insurance proceeds and/or damages under or arising from the Buyer's Assurance Plan.

---

notified that any warranty has ended for any reason (such as bankruptcy of the manufacturer or other responsible party), the Buyer's Assurance Plan will continue to provide coverage, not to exceed one year from the date the Cardmember is notified of such an event. The Cardmember may be asked to provide proof in the form of a public announcement or other official documentation.

The Buyer's Assurance Plan is underwritten by AMEX Assurance Company ("Insurer"), Administrative Office, Green Bay, Wisconsin. This document serves only as a description of coverage and is not a policy or contract of insurance; the actual terms, conditions and exclusions of Policy AX0955 ("Policy") govern the Buyer's Assurance Plan. The Policy has been issued to American Express Travel Related Services Company, Inc. ("American Express"), the Policyholder. This document replaces all existing prior Descriptions of Coverage for the Buyer's Assurance Plan.

[signature] Kenneth J. Ciak

[signature] Timothy Meehan

Kenneth J. Ciak, President
AMEX Assurance Company
6717-11-01

Timothy Meehan, Secretary
AMEX Assurance Company

*1. For those eligible and enrolled in the Membership Rewards program, the entire cost of a covered product may also be purchased through redemption of a Membership Rewards program redemption certificate.*

*2. Credit reimbursement does not apply to New York State residents.*

*3. For those eligible and enrolled in the Membership Rewards program, payment or credit will not exceed the original assigned value of the personal property received through redemption of a Membership Rewards program redemption certificate up to the stated limits, excluding shipping and handling expense.*

*4. Important note for those enrolled in the Membership Rewards program: A Membership Rewards program redemption certificate can only be redeemed by eligible Cardmembers. Benefits will not be paid when a Membership Rewards program redemption certificate has been transferred to non-eligible Cardmembers and/or non-Cardmembers.*

*5. Does not apply to New York State residents.*

## $100,000 – $250,000 – $500,000 – $1,500,000¹
### TRAVEL ACCIDENT INSURANCE
#### UNDERWRITTEN BY
## AMEX ASSURANCE COMPANY
### ADMINISTRATIVE OFFICE, GREEN BAY, WISCONSIN
### (HEREIN CALLED "THE COMPANY")

## Description of Coverage

**Covered Persons:** A person shall be a Covered Person under the Blanket Master Group Policy AX0948 (the "Policy") only if:
1. he or she is:
   a. *For $100,000 coverage,* a Basic or Additional Cardmember who has any of the following Cards, or the extended payment Account offered in conjunction with any of the following, issued by American Express Travel Related Services Company, Inc. or its participating subsidiaries ("American Express") in his or her name: American Express® Rewards Green Card, American Express® Preferred Rewards Green Card, American Express® Rewards Gold Card, American Express® Preferred Rewards Gold Card, American Express® Business Card, American Express® Cash Rebate Card, American Express® Community Business, American Express® Credit Card, American Express® Investment Management Account Gold Card, American Express® Costco Cash Rebate Credit Card, The American Express® Costco Card (IDC); American Express® Costco Business Card, Bank of Hawaii Credit Card from American Express, Bank of Hawaii Gold Credit Card from American Express, Best Rate Card, Blue for Business from American Express, Blue for Students℠, Blue from American Express, Business Capital Line from OPEN: The Small Business Network℠, Business Gold Card from OPEN: The Small Business Network℠, American Express® Business Management Account from OPEN: The Small Business Network℠, Business *Membership Rewards®* Card, American Express® Business Purchase Account from OPEN: The Small Business Network℠, Buyer's Bonus Card, Continental OnePass Credit Card from American Express, Corporate Card from OPEN: The Small Business Network℠ including, beginning with Account number 37134, American

---

Express® Business Card from the Cardmember from OPEN: The Business Network℠, Corporate Costco Card from OPEN: The Small Business Network℠, Delta SkyMiles® Business Credit Card from OPEN: The Small Business Network℠, Gold Delta SkyMiles Business Credit Card from OPEN: The Small Business Network℠, Delta SkyMiles® Credit Card, Delta SkyMiles® Options Business Credit Card, American Express Executive Business Card from OPEN: The Small Business Network℠, Gold American Express Portfolio Card from OPEN: The Small Business Network℠, Gold Card, Gold Delta SkyMiles® Credit Card, Gold Security Card, Gold Student Card, *Membership Rewards®* Credit Card from American Express, *Membership Rewards Options®* Card from American Express, National Multiple Sclerosis Card, Optima® Card Accounts, Optima® Cash Rewards Card, Gold Card, Optima® Platinum Card, Optima® Platinum Rebate Card, Optima® Platinum Preferred Card, Personal Personal Choice Card, Personal Senior Card, Personal Card, Platinum Cash Rebate Card, Platinum Delta SkyMiles® Credit Card, Platinum ShopRite Credit Card from American Express, Starwood Preferred Guest Credit Card from American Express, The American Express® Golf Card, The Fidelity Express® Card, The Fidelity American Express® Gold Card, Hilton HHonors® Platinum Credit Card from American Express, Binghamton Savings Bank Gold Credit Card from American Express, Binghamton Savings Bank Business Credit Card from American Express, The New York Knicks Card from American Express, The New York Rangers Card from American Express, Small Business Card from American Express, or

   b. *For $250,000 coverage,* a Basic or Additional Cardmember who has a Rewards Plus Gold Card, Corporate Rewards Plus Card, or the extended payment Account offered in conjunction with either, issued by American Express Travel Related Services Company, Inc. or its participating subsidiaries ("American Express") in his or her name; or

   c. *For $500,000 coverage,* a Basic or Additional Cardmember who has a Platinum Card®, Fidelity American Express Platinum Card, American Express® Investment Management Account Platinum Card, American Express Business Platinum Card® from OPEN: The Small Business Network℠, Lexus Platinum Card℠, American Express Platinum Financial Services Card, LAC IDC Platinum Card, the extended payment Account offered in conjunction with any of these, issued by American Express Travel Related Services Company or its participating subsidiaries ("American Express") in his or her name on a Platinum Card Account; or

   d. *For $1,500,000 coverage,* a Basic or Additional Cardmember who has a Centurion Card, American Express® Business Card® from OPEN: The Small Business Network℠ or the extended payment Account offered in conjunction with and issued by American Express Travel Related Services Company, Inc. or its participating subsidiaries ("American Express") in his or her name on a Centurion Card Account; or

   e. the spouse, Domestic Partner or dependent child under any eligible person described in (a), (b), (c), (d) above.
2. his or her Permanent Residence is in the 50 United States or America, District of Columbia, Puerto Rico, or U.S. Virgin Islands.

## Definitions

"Accident" whenever used in this Policy means an unexpected event which causes Injury and shall also include exposure resulting from a mishap on a Common Carrier Conveyance in which the Covered Person is traveling.

"Additional Cardmember" means any individual who has received an American Express Card at the request of a Basic Cardmember for use in connection with the Basic Cardmember's American Express Card Account.

"American Express Card" shall mean, unless otherwise specified the Cards or Accounts listed above under Covered Persons.

"Basic Cardmember" means any individual who has asked American Express to issue one or more American Express Cards and who has an American Express Card account.

"Common Carrier Conveyance" means an air, land or water vehicle (other than a rental) licensed to carry passengers for hire and available to the public.

A trip is a "Covered Trip" if:
1. it is a trip taken by the Covered Person between the point of departure and the final destination as shown on the Covered Person's ticket and verification issued by the Common Carrier Conveyance; and
2. the Covered Person's entire fare for such trip on that Common Carrier Conveyance has been actually charged to a specific American Express Card account prior to any Injury.

"Domestic Partner" means a person of the same or opposite gender who meets the following requirements:
1. has shared a residence with the Basic or Additional Cardmember, and intends to continue doing so;

Case 2:09-cv-07335-SJO-MAN Document Filed 10/08/09 Page 27 of 39 Page ID #:27

2. is not married to any other person; and

3. is at least 18 years old;

4. is not related to the Basic or Additional Cardmember by blood closer than would bar marriage per state law; and

5. is financially interdependent with the Basic or Additional Cardmember and documentation of mutual financial support such as copies of joint home ownership or lease, common bank accounts, credit cards or investments can be supplied.

"Injury" means bodily injury which:

1. is caused by an Accident which occurs while the Covered Person's insurance is in force under the Policy; and

2. results in Loss insured by the Policy; and

3. creates a Loss due, directly and independently of all other causes, to such accidental bodily injury.

"Permanent Residence" means the Covered Person's one primary dwelling place, where the Covered Person permanently resides.

### Benefit Amounts

*As a benefit of Cardmembership, the Covered Person will receive a benefit level of $100,000 – $250,000 – $500,000 – $1,500,000 depending on the type of American Express Card account used to charge the Common Carrier Conveyance fare for the Covered Trip. Please refer to the Covered Persons section of this Description of Coverage. If you are still unsure what benefit level of coverage applies to your American Express Card, please contact the Customer Service Center toll-free number listed on the back of your Card, also shown on your Card statement.*

Table of Losses

| Loss of Life | $100,000 | $250,000 |
|---|---|---|
| Dismemberment | | |
| Loss of both hands or both feet | $100,000 | $250,000 |
| Loss of one hand and one foot | $100,000 | $250,000 |
| Loss of entire sight of both eyes | $100,000 | $250,000 |
| Loss of entire sight of one eye and one hand or one foot | $100,000 | $250,000 |
| Loss of one hand or one foot | $50,000 | $125,000 |
| Loss of entire sight of one eye | $50,000 | $125,000 |

Table of Losses

| Loss of Life | $500,000 | $1,500,000 |
|---|---|---|
| Dismemberment | | |
| Loss of both hands or both feet | $500,000 | $1,500,000 |
| Loss of one hand and one foot | $500,000 | $1,500,000 |
| Loss of entire sight of both eyes | $500,000 | $1,500,000 |
| Loss of entire sight of one eye and one hand or one foot | $500,000 | $1,500,000 |
| Loss of one hand or one foot | $250,000 | $750,000 |
| Loss of entire sight of one eye | $250,000 | $750,000 |

"Loss" as used above with reference to hand or foot means complete and permanent severance through or above the wrist or ankle joint, and as used with reference to eye means the irrecoverable loss of the entire sight of such eye.

### $100,000 – $250,000 – $500,000 – $1,500,000
### Maximum Indemnity per Covered Person

In no event will multiple American Express Cards obligate the Company to pay for more than one Loss sustained by any one individual Covered Person as a result of any one Accident. The Company's obligation under the Policy will be determined according to the highest amount payable under the specific American Express Card actually used to charge the Common Carrier Conveyance fare for the Covered Trip as stated in the Benefit Amounts.

In no event will a Loss from an Injury while coverage is in force under the Policy AX0048 obligate the Company to pay benefits under Policy AX0049, the Company's Business Travel Accident Insurance policy, in addition to any benefits payable by the Company under the Policy AX0048. The American Express Cards listed under this Policy do not receive coverage under Policy AX0049.

### Accidental Death and Dismemberment Benefit

The Company will pay the applicable benefit amount as determined from the Table of Losses if a Covered Person suffers a Loss from an Injury while coverage is in force under the Policy, but only if such Loss occurs within 100 days after the date of the Accident which caused the Injury. Benefits will be paid for the greatest Loss. In no event will the Company pay for more than one Loss sustained by the Covered Person as the result of any one Accident.

### Description of Benefits

**Common Carrier Benefit:** This Benefit is payable if the Covered Person sustains Injury as a result of an Accident which occurs while riding solely as a passenger in, or boarding, or alighting from or being struck by a Common Carrier Conveyance used on a Covered Trip.

### Exposure and Disappearance

If the Covered Person is unavoidably exposed to the elements because of an Accident on a Covered Trip which results in the disappearance,

result of such exposure, the Covered Person suffers a Loss for which benefits are otherwise payable under the Policy, such Loss will be covered under the Policy.

If the Covered Person disappears because of an Accident on a Covered Trip which results in the disappearance, sinking or wrecking of the Common Carrier Conveyance, and if the Covered Person's body has not been found within 52 weeks after the date of such Accident, it will be presumed, subject to there being no evidence to the contrary, that the Covered Person suffered Loss of Life as a result of Injury covered by the Policy.

### Coverage Requirements

A Covered Person will be fully insured for benefits under the Policy while taking a trip on a Common Carrier Conveyance only when the fare has been charged to the specific American Express Card. Eligibility for coverage will remain in effect as long as the definition of a Covered Person is met.

### Premiums

The premium for this coverage is payable by American Express.

### Exclusions

This Policy does not cover any Loss caused or contributed to by (1) intentionally self-inflicted Injury; suicide or any attempt thereat, while sane; (2) war or any act of war whether declared or undeclared, however, any act committed by an agent of any government, party, or faction engaged in war, hostilities, or other warlike operations provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval or air forces) in the country where the Injury occurs shall not be deemed an act of war; (3) Injury to which a contributory cause was the commission of or attempt to commit an illegal act by or on behalf of the Covered Person or his/her beneficiaries; (4) Injury received while serving as an operator or crew member of any conveyance; (5) Injury received while driving, riding as a passenger in, boarding or alighting from a rental vehicle; (6) sickness, physical or mental infirmity, pregnancy, or any medical or surgical treatment for such conditions, unless treatment of the condition is required as the direct result of a covered Injury.

### Beneficiary

A Basic Cardmember may designate a beneficiary or change a previously designated beneficiary for himself/herself and his/her spouse/Domestic Partner and dependent children who are not also Basic or Additional Cardmembers. An Additional Cardmember may designate a beneficiary for himself/herself and his/her spouse/Domestic Partner and dependent children who are not also Basic or Additional Cardmembers or spouses/Domestic Partners or dependent children of Basic Cardmembers. No persons other than those stated above may designate or change a previously designated beneficiary. For such designation or change to become effective, a written request, on a form satisfactory to the Company, must be filed with American Express. Such designation or change shall take effect as of the date it was signed by the designator provided that it has been received by American Express, but any payment of proceeds made by the Company prior to receipt of such designation of change shall fully discharge the Company to the extent of such payment.

### Claims

Notice of claim must be given to AMEX Assurance Company, Claims Administrative Office, PO Box 19018, Green Bay, WI 54307-9018 within 20 days after the occurrence or commencement of any Loss covered by the Policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of the claimant to the Company at its Administrative Office, or to any authorized agent of the Company, with information sufficient to identify the Covered Person shall be deemed notice to the Company.

### Payment of Claims

Benefits for Loss of life of a Covered Person will be paid to the designated beneficiary. Benefits for all other Losses sustained by a Covered Person will be paid to the Covered Person, if living, otherwise to the designated beneficiary. If more than one beneficiary is designated and the beneficiaries' respective interests are not specified, the designated beneficiaries shall share equally. If no beneficiary has been designated, or if the designated beneficiary does not survive the Covered Person, the benefits will be paid to the first surviving class of the following: 1) spouse or Domestic Partner; 2) children, equally per stirpes; and 3) the estate.

In determining such person or persons, the Company may rely upon an affidavit by a member of any of the classes of preference beneficiaries described above. Payment based upon any such affidavit shall fully discharge the Company from all obligations under the Policy unless, before such payment is made, the Company has received at its Administrative Office written notice of a valid claim by some other person(s). Any amount payable to a minor may be paid to the minor's legal guardian.

### Time Limit on Actions

No action at law or in equity shall be brought to recover under the Policy after the expiration of three years, five years for Centurion Card,

Business Network℠, after the time written proof of loss is required to be furnished.

The benefits described herein are subject to all of the terms and conditions of the Policy. This Description of Coverage replaces any prior Description of Coverage which may have been furnished in connection with the Policy.

*[signature]* Kenneth J. Clak

*[signature]*

Kenneth J. Clak, President
AMEX Assurance Company
6713-11-01-COM

Timothy S. Meehan, Secretary
AMEX Assurance Company

**Notice to Florida Residents Only:** The benefits of the Policy providing your coverage are governed primarily by the laws of a state other than Florida.

*1. If, after reading this Description of Coverage, you are still unsure what benefit level of coverage applies to your American Express Card, please contact the Customer Service Center toll-free number listed on the back of your Card, also shown on your Card statement.*

7

Exhibit C, Page 26

# EXHIBIT D

# ▲ Delta
# SkyMiles

**Activate your new Card TODAY —**
**call 1-800-831-6832**

YOUR NEXT VACATION IS CLOSER THAN YOU THINK.
Earn 1,000 miles with your first purchase.[1]

REDACTED

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
ALFREDO N LOPEZ



018010081872Q063
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

0000063 0000063 03333 04104370000102000 7359-0001-0466 **NEW ACCOUNT**

## Supplement to the Cardmember Agreement

**Current Purchase APR(s):**
Intro: 3.90% intro APR (0.0107% DPR) in effect
through billing periods ending 05/04.
✗ Standard: 12.99% (0.0356% DPR)

**Current Cash Advance APR\*:**
Standard: 18.99% (0.0520% DPR)

**Line of Credit:** $2,000
**Cash Advance Limit:** $400

These terms and conditions supplement information in the enclosed
Cardmember Agreement and form a part of it and, by accepting the card,
you are agreeing to the terms below as well as to those contained in the
Cardmember Agreement.

**Calculation of Daily Periodic Rate**
The Daily Periodic Rate for Purchases is based on an **ANNUAL
PERCENTAGE RATE** (" **APR** "). Subject to the "Calculation of
Daily Periodic Rate" section of the Cardmember Agreement, the **APR** for Purchases is equal to a fixed **APR** of 12.99%. The Daily Periodic
Rate for Purchases for each billing period is 1/365th of the **APR** for Purchases in effect for that billing period, rounded to the nearest one
ten-thousandth of a percentage point.

\* This is a variable APR, see your Cardmember Agreement for additional details.

**SIGN YOUR CARD HERE AS SHOWN BELOW**

3737 32134

# Take it with you wherever you go. Use it for everything you buy.

**ADDITIONAL CARDS[2] HELP YOU EARN MORE MILES.**

Share the benefits and services of your Delta SkyMiles®
Options Credit Card with family and friends by
ordering Additional Cards. They'll enjoy the convenience
of using the Card and with every eligible dollar they spend
you can earn miles for travel rewards. Ask for Additional
Cards to be added to your account — with no additional
annual fees — when you activate your Card.

**MANAGE YOUR ACCOUNT FASTER AND EASIER.**

Now you can track charges, check your account
balance — even pay your bill online when you sign
up for Manage Your Card Account Online.
Visit **americanexpress.com/newcardmember**

# EXHIBIT E

American Express
P.O. Box 297812
Ft. Lauderdale, FL  33329-7812



| REDACTED |

August 06, 2009

00907

|ıılllıılıılılılılıılılılllllllıılıılllllll|llllılılılıl

ALFREDO N LOPEZ

3

Recd aug. 13 '09

Re: Delta SkyMiles® Options

Account Number ending in

## Important Account Price Change Notification

Like all companies large and small, our pricing has to be responsive to the business and economic environment.
As a result, we have found it necessary to increase rates and fees on some of our products. Below are the
principal changes to your account:

- We are changing your Annual Percentage Rate (APR) on purchases from a fixed rate to a
  variable rate.  This change will result in an increase to your APR.

- We are raising the Annual Percentage Rate (APR) on cash advances.

- We are raising the Annual Percentage Rate (APR) on any balances that have a penalty rate
  because of a late payment.

- We are increasing the late fee.  Please remember that you can avoid late fees by paying on
  time.

In addition, we are pleased to let you know that we will not charge you a fee if you go over your credit limit.
Don't forget, it's still important to keep your balance under your credit limit.

These changes apply to existing balances and future balances on your Account.  They go into effect for billing
periods that begin on or after October 1, 2009, unless otherwise noted.  Please refer to the Notice of Changes to
Your Account on the back of this letter for the complete description of these changes.

You can find useful tips and information about managing your account, such as viewing your outstanding
balance, as well as making payments at any time, free of charge, by logging on to
americanexpress.com/managemyaccount.

Thank you for being a Cardmember.  We look forward to continuing to serve you.

*- See reverse side for important information -*

O88808S1

# EXHIBIT F

## Notice of Changes to Your Account

The terms of your Account are subject to change in accordance with the American Express Cardmember Agreement ("Agreement") governing your Account referenced in or with this notice (including increasing rates and fees, changing fixed rates to variable rates, and adding new terms). Any language in your Agreement contrary to or conflicting with terms amended herein is replaced fully and completely. All terms of the Agreement not amended herein remain in full force and effect. These changes apply to existing balances and future balances on your Account. We urge you and any Additional Cardmembers on your Account to read this notice carefully and file it along with your Agreement in a safe place for future reference.

**Standard APR for Purchases**

Effective with billing periods that begin on or after October 1, 2009, we are changing the Standard APR for Purchases from a fixed rate to a variable rate equal to the Prime Rate plus 11.25%. As of August 1, 2009, the Prime Rate plus 11.25% is an **APR** (Annual Percentage Rate) of 14.50% and a DPR (Daily Periodic Rate) of 0.0397%.

**APR for Cash Advances**

Effective with billing periods that begin on or after October 1, 2009, the second sentence of subsection B of the Finance Charges section of your Agreement is deleted and replaced with the following:
   "The **APR** for Cash Advances is the Prime Rate plus 21.99%."
This is a variable rate. As of August 1, 2009, the Prime Rate plus 21.99% is an **APR** of 25.24% and a DPR of 0.0692%.

**APR for Late Payment**

Effective with billing periods that begin on or after October 1, 2009, the first sentence of subsection C of the Finance Charges section of your Agreement is deleted and replaced with the following:
   "Notwithstanding the foregoing, unless a higher rate applies, the **APR** for all balances will be equal to Prime plus 23.99% if during any Review Period any portion of any Minimum Amount Due is not credited to your Account by its Payment Due Date. "
This is a variable rate. As of August 1, 2009, the Prime Rate plus 23.99% is an **APR** of 27.24% and a DPR of 0.0746%.

**Late Fees**

Effective with Payment Due Dates on or after October 26, 2009, the text of the Late Fees section of your Agreement is deleted and replaced with the following:
   "We will assess a Late Fee if a payment of at least the Minimum Amount Due is not credited to your Account by the Payment Due Date. The amount of the Late Fee depends on the amount of the Previous Balance on the statement on which the Late Fee appears, as follows;

| Previous Balance | Late Fee |
|---|---|
| Less than $250 | $19 |
| $250 or greater | $39" |

**Over-limit Fee**

Effective with billing periods that begin on or after October 1, 2009, the Over-limit Fee subsection of the Other Fees section of your Agreement is deleted. In addition, the subheading numbers in the Other Fees section are removed.

C6389

O88808S1

c0048a00907t532p001 LGS    LGUFDL2U*    *    *    *    *    *    *

Exhibit F, Page 32

# EXHIBIT G

American Express
PO Box 981532
El Paso, TX 79998



REDACTED

Alfredo N Lopez



March 21, 2008

I.I.I.II...I..I.III..I..I.II..I.I.I.I.I.I..I.I.I..II..II..I..I.I.I.I

Account Ending In:

Dear Alfredo N Lopez:

A recent review of our records indicates we incorrectly assessed Finance Charges to fee(s) on your American Express Account since July 2007.

We apologize for any inconvenience this may have caused and want to assure you we have resolved the issue. We have taken corrective measures by issuing offsetting debit and credit entries for the fee(s) and a credit for the Finance Charge. The adjustments will appear on an upcoming statement(s).

If we can be of any further assistance, please call the number on the back of your card or on your statement, 24 hours a day, 7 days a week to speak with a Customer Service Representative.

Sincerely,

*H. Figueroa*

H. Figueroa
Customer Service Supervisor

The issuer of this card is American Express Bank, FSB.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV09-7335 SJO (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

Michael D. Braun (Bar No. 167416)
BRAUN LAW GROUP, P.C.
10680 W. Pico Blvd., Suite 280
Los Angeles, CA 90064
Phone: (310) 836-6000; Fax: (310) 836-60106
E-Mail: service@braunlawgroup.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFREDO M. LOPEZ and LAUREN R. GREENE, individually and on behalf of all others similarly situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>AMERICAN EXPRESS BANK, FSB, and AMERICAN EXPRESS CENTURION BANK,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV09-7335 SJO (MANx)**<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): AMERICAN EXPRESS BANK, FSB, and
AMERICAN EXPRESS CENTURION BANK,

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Michael D. Braun, Esq._____, whose address is _Braun Law Group, P.C., 10680 W. Pico Blvd., Suite 280, Los Angeles, CA 90064_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __**0 8 OCT 2009**_____    By: _____
                                             Deputy Clerk

                                          *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                         **SUMMONS**

ORIGINAL

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
ALFREDO M. LOPEZ and LAUREN R. GREENE, individually and on behalf of all others similarly situated

**DEFENDANTS**
AMERICAN EXPRESS BANK, FSB, and AMERICAN EXPRESS CENTURION BANK

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Michael D. Braun (Bar No. 167416), BRAUN LAW GROUP, P.C.
10680 W. Pico Blvd., Suite 280, Los Angeles, CA 90064

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
(1) Violation of the Truth In Lending Act, 15 U.S.C. § 1601 et seq.; (2) Breach of Implied Covenant of Good Faith and Fair Dealing

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☑ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV09-7335

FOR OFFICE USE ONLY:   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                                CIVIL COVER SHEET                                Page 1 of 2

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Utah |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
  **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date 10/8/09

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |