BRAUN LAW GROUP PC
MICHAEL D. BRAUN, SBN: 167416
service@braunlawgroup.com
10680 W. Pico Boulevard, Suite 280
Los Angeles, CA 90064
Telephone:   (310) 836-6000
Facsimile:    (310) 836-6010

STANLEY LAW GROUP
MATTHEW J. ZEVIN, SBN: 170736
mzevin@aol.com
225 Broadway, Suite 1350
San Diego, CA  92101
Telephone:   (619) 235-5306
Facsimile:    (815) 377-8419

Attorneys for Plaintiffs
[Additional Counsel on Signature Page]

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFREDO M. LOPEZ and LAUREN R. GREENE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN EXPRESS BANK, FSB, and AMERICAN EXPRESS CENTURION BANK,<br><br>Defendants. | Case No. CV09-7335SJO(MANx)<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>JUDGE:   Honorable S. James Otero<br>CTRM:   1, Second Floor |

Plaintiffs, Alfredo M. Lopez and Lauren R. Greene, individually and on behalf of all others similarly situated, allege as follows:

## NATURE OF CASE

1. Plaintiffs Alfredo M. Lopez and Lauren R. Greene are American Express credit card customers. On behalf of themselves and a proposed class of similarly situated American Express customers ("the Class"), they seek an injunction and damages for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*, for violations of California's consumer protection statutes, and for breach of contract, including the implied covenant of good faith and fair dealing, because American Express has improperly changed and increased their fixed annual percentage rate of interest to a higher and variable rate – despite the fact that neither this change nor this increase was contractually agreed to or disclosed as required by TILA.

## JURISDICTION AND VENUE

2. Jurisdiction is conferred on this Court by 15 U.S.C. § 1640(e).

3. Venue lies in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff Alfredo M. Lopez ("Mr. Lopez") is an individual who resides in Marina del Rey, California. At all relevant times, he held an American Express credit card with a fixed APR for purchases that was converted by American Express to a higher variable rate. Plaintiff Lauren R. Greene ("Ms. Greene") is an individual who resides in Marina del Rey, California. At all relevant times, she held an American Express credit card with a fixed APR for purchases that was converted by American Express to a higher variable rate. Mr. Lopez and Ms. Greene are sometimes referred to hereinafter collectively as "Plaintiffs."

5. Defendant American Express Bank, FSB, is a thrift headquartered in Salt Lake City, Utah. American Express Bank, FSB, does a substantial amount of business in California.

6. Defendant American Express Centurion Bank is an industrial loan bank headquartered in Salt Lake City, Utah. American Express Centurion Bank does a substantial amount of business in California.

7. Defendants are hereinafter collectively referred to as "American Express" or "the Bank."[1]

## BACKGROUND

8. The annual percentage rate of interest ("APR") is a fundamental term on which banks extend credit. APR is the cost of credit expressed as a yearly rate. Because all lenders are subject to the same rules designed to insure the accuracy of the APR, it is a valuable tool for consumers to use in comparing the cost of credit.

9. Congress passed TILA to protect consumers from inaccurate and unfair credit billing and credit card practices. TILA and its implementing regulation, 12 C.F.R. §§ 226, *et seq.* ("Regulation Z"), require detailed disclosures by lenders in connection with open-ended credit arrangements. Such disclosures must, among other things, clearly, conspicuously and accurately disclose all potentially applicable APRs, the methodology for calculating such APRs, and all events and circumstances by which the APRs may apply or change.

## FACTUAL ALLEGATIONS

10. The terms of the credit American Express extends to its credit card customers are governed by the card member agreement ("Agreement") it provides to such customers upon an offer and acceptance of credit.

11. In or around October, 2003, American Express mailed a credit card solicitation letter (the "Solicitation Letter") to Mr. Lopez in California. In the Solicitation Letter, American Express offered Mr. Lopez an introductory APR of 3.9% for six months, after which time the APR would be fixed at "just 12.99%." Specifically, underneath the heading "Take off with a low 3.9% introductory APR

---

[1] *See infra* ¶ 19.

and no annual fee," American Express promised Mr. Lopez:

> You'll enjoy a low introductory 3.9% APR for your first six months with the Delta Skymiles Options Credit Card. It's perfect for transferring balances from other cards that charge higher rates. Then you'll continue to enjoy a low fixed APR of just 12.99%.

A true and correct copy of the Solicitation Letter is attached hereto as Exhibit A.

12. American Express included a document entitled "Disclosure" (the "Initial Disclosure") with its Solicitation Letter. The terms in the upper left-hand corner of the Initial Disclosure mirrored the terms in the Solicitation Letter: under the heading "Annual Percentage Rate (APR) for Purchases," American Express states, "3.9% Introductory rate for purchases during the first six months of Card membership. Then, a fixed rate of 12.99%." The figure "12.99%" appears in a font size at least twice as large as that of any other character on the Initial Disclosure. In contrast to the fixed 12.99% rate for purchases, the Initial Disclosure states (under the heading "Variable Rate Information"): "Your APR may vary. The APR for Cash Advances is determined monthly by adding 14.99% to the Prime Rate." A true and correct copy of the Initial Disclosure is attached hereto as Exhibit B.

13. Under the heading "Other APRs," the Initial Disclosure states "Default APR. Fixed rate of 23.99%. See explanation below.*" Below, the Initial Disclosure lists four grounds which will cause the Default Rate to replace the other stated rates. The Initial Disclosure does not disclose that the purchase rate can be changed from a fixed rate to a variable rate or that it can be increased for any reason other than one of the four listed grounds of default.

14. On or about October 27, 2003, Mr. Lopez mailed a complete application for a credit card to American Express. In the application, Mr. Lopez accepted American Express' invitation for an additional card to be issued to Ms. Greene in California. American Express issued cards to Mr. Lopez and Ms. Greene in California in December, 2003.

15. With the cards American Express sent to Mr. Lopez and Ms. Greene, American Express also sent the Agreement and a "Supplement to the Cardmember Agreement" ("Supplement"). The Agreement itself does not reference the introductory 3.9% APR or the 12.99% fixed APR for purchases; rather, the Agreement states: "Your DPR's ['Daily Periodic Rate'] and APR's for purchases appear on the accompanying supplement(s)." The first full sentence of the Agreement states, "This document and the accompanying supplement(s) constitute your Agreement." A true and correct copy of the Agreement is attached hereto as Exhibit C, and a true and correct copy of the Supplement is attached hereto as Exhibit D.

16. The Supplement states: "Current Purchase APR(s): Intro: 3.90% intro APR (0.0107% DPR) in effect through billing periods ending 05/04. Standard: 12.99% (0.0356% DPR)." Following the information for the purchase APR, the Supplement states, "Current Cash Advance APR*: Standard: 18.99% (0.0520% DPR)." Several lines beneath this statement, the asterisk reference explains, "*This is a variable APR, see your Cardmember Agreement for additional details." Ex. D. The Agreement states that "The APR for Cash Advances is the Prime Rate plus 14.99%." Ex. C.

17. Thus, the Agreement and the Supplement, consistently with the Solicitation Letter and Initial Disclosure, obligate American Express to provide Mr. Lopez and Ms. Greene with a fixed rate APR for purchases of 12.99% following six months of use of the card (during which time the APR is 3.9%). In contrast, the Agreement and Supplement, consistently with the Initial Disclosure, permit American Express to charge Mr. Lopez and Ms. Greene a variable APR for cash advances, consisting of the prime rate plus 14.99%. *See* Exs. A-D.

18. Nowhere in the Agreement, Supplement, Initial Disclosure, or Solicitation Letter does American Express disclose, let alone clearly and conspicuously disclose, that the APR for purchases is, or ever could be changed to,

1 a variable rate tied to the prime rate (or any other rate). Rather, American Express
2 very clearly distinguishes the *fixed* APR for purchases from the *variable* APR for
3 cash advances. *See* Exs. A-D. Likewise, nowhere in those documents does
4 American Express ever disclose, let alone clearly and conspicuously disclose, that
5 the APR for purchases can be increased for reasons other than the listed grounds of
6 default.

7     19. On or about March 21, 2008, American Express sent Mr. Lopez a
8 letter acknowledging an incorrect assessment of charges on his account. The
9 bottom of the letter states, "The issuer of this card is American Express Bank,
10 FSB." A true and correct copy of this letter is attached hereto as Exhibit G. Thus,
11 notwithstanding the fact that American Express Centurion Bank is a party to the
12 Agreement, both American Express Centurion Bank and American Express Bank,
13 FSB are named as Defendants in this Complaint and are referred to collectively as
14 "American Express."

15     20. On or about August 6, 2009, American Express sent Mr. Lopez a
16 letter ("Letter"), enclosing a "Notice of Changes to Your Account ("Notice of
17 Changes")." In the Letter, American Express states:

18     Like all companies large and small, our pricing has to be responsive to
19     the business and economic environment. As a result, we have found it
20     necessary to increase rates and fees on some of our products. Below
21     are the principal changes to your account:
22     • We are changing your Annual Percentage Rate (APR) on
23       purchases from a fixed rate to a variable rate. This change will
24       result in an increase to your APR.

25 American Express further explains that the changes apply to existing balances, and
26 "go into effect for billing periods that begin on or after October 1, 2009." A true
27 and correct copy of the Letter is attached hereto as Exhibit E, and a true and correct
28 copy of the Notice of Changes is attached hereto as Exhibit F.

5

21. The Notice of Changes states, "[w]e are changing the Standard APR for Purchases from a fixed rate to a variable rate equal to the Prime Rate plus 11.25%. As of August 1, 2009, the Prime Rate plus 11.25% is an APR (Annual Percentage Rate) of 14.50% and a DPR (Daily Periodic Rate) of 0.0397%." The Notice of Changes also states, "the terms of your account are subject to change in accordance with the American Express Cardmember Agreement ('Agreement') governing your Account referenced in or with this notice (including increasing rates and fees, *changing fixed rates to variable rates*, and adding new terms)." (Emphasis added).

22. Contrary to the language of the Notice of Changes, however, nothing in the Agreement, Supplement, Solicitation Letter or Initial Disclosure states that American Express can change a fixed rate to a variable rate. *See* Exs. A-D. Rather, the Agreement, Supplement, Solicitation Letter, and Initial Disclosure all make clear that the APR for purchases is a fixed rate, while the APR for cash advances is a variable rate. *See* Exs. A-D. Further, none of these documents clearly and conspicuously discloses that the fixed rate for purchases can be increased for reasons other than the four stated grounds of default. *See* Exs. A-D.

23. Thus, American Express has changed the fixed purchase APR of Mr. Lopez and Ms. Greene (together with the APRs of all similarly-situated customers in California) to a variable rate, thereby raising it, despite having previously disclosed and committed to a fixed APR for purchases and never having disclosed in a clear and conspicuous manner that the fixed rate for purchases could be changed to a variable rate or could be increased for reasons other than the four stated grounds of default. Buried near the end of the Agreement, following several pages of fine print, American Express included a provision ("Changing this Agreement") that purports to allow it to "change the terms of or add new terms to this Agreement at any time, in accordance with applicable law." Ex. C at 3. This provision does not constitute clear and conspicuous notice that American Express

6

1   could increase the fixed APR for purchases for reasons other than the four stated
2   grounds of default, or that American Express could change the fixed APR for
3   purchases to a variable rate.
4        24.   Mr. Lopez and Ms. Greene have an existing balance to which
5   American Express has applied the variable, higher APR.  Mr. Lopez and
6   Ms. Greene could not afford to pay off the entirety of that balance to avoid being
7   subject to the higher interest charges as a result of American Express having
8   changed their fixed purchase APR to a variable APR.  As of the filing of this First
9   Amended Complaint, American Express has applied a variable APR of 14.49% to
10  their existing and new balances for purchases, which is higher than the previously
11  agreed upon 12.99% fixed rate, thereby causing damages to Mr. Lopez and
12  Ms. Greene.  Upon information and belief, it has done the same and caused
13  damages to several thousands of other American Express cardmembers.

## CLASS ACTION ALLEGATIONS

15       25.   Pursuant to Fed. R. Civ. P. 23, Mr. Lopez and Ms. Greene bring this
16  action on behalf of themselves and a Class of all other persons similarly situated.
17       The Class consists of:
18          All persons or entities in the United States who: (a) had a consumer or
19          small-business American Express credit card or charge card account
20          with American Express Centurion Bank or American Express Bank,
21          FSB; and (b) had a fixed annual percentage rate for purchases on the
22          account that was increased or changed to a variable rate at any time
23          between October 1, 2005 and December 31, 2010; or (c) had a fixed
24          annual percentage rate for purchases on the account and were provided
25          notice of an increase in the fixed rate or a change from the fixed rate to
26          a variable rate at any time between October 1, 2005 and December 31,
27          2010. Excluded from the Class are American Express; any parent,
28          subsidiary, or affiliate of American Express or any employees, officers,

1         or directors of American Express; legal representatives, successors, or
2           assigns of American Express; and any justice, judge or magistrate judge
3           of the United States who may hear the case, and all persons related to
4           any such judicial officer, as defined in 28 U.S.C. § 455(b).
5 Plaintiffs reserve the right to modify or amend this proposed definition of the Class
6 in connection with any motion to certify a class or based on information or
7 discovery learned during the course of this litigation.

8       26.    There are questions of law and fact that are common to all members of
9 the Class, which questions predominate over any question affecting only individual
10 Class members. The principal common issues are:

11         a)    whether American Express violated TILA through its actions as
12 described herein;

13         b)    whether Plaintiffs and the Class members have a right to
14 recover actual and/or statutory damages by virtue of American Express' failure to
15 comply with TILA;

16         c)    whether American Express breached its contracts and/or the
17 implied covenant of good faith and fair dealing;

18         d)    whether Plaintiffs and the Class members have a right to
19 recover damages by virtue of American Express' breaches of the implied covenant
20 of good faith and fair dealing;

21         e)    whether American Express violated California's Business and
22 Professions Code §§ 17200, *et. seq.*;

23         f)    whether Plaintiffs and the Class members have a right to obtain
24 injunctive relief and/or restitution by virtue of American Express' violations of
25 California's consumer protection laws;

26         g)    whether American Express has included language in its
27 cardmember agreements that is unconscionable under California law; and

28         h)    the nature and extent of any other remedies, including statutory

damages, restitution and/or injunctive relief, to which proposed Class members are entitled as a result of American Express' wrongful conduct.

27. The only potential individual questions concern the computation of damages to be awarded each Class member, which are questions that can be determined by a ministerial examination of the relevant files. For notice purposes, Class members can be identified using American Express' computerized databases of customer records.

28. Plaintiffs' claims are typical of the claims of all of the other Class members, because their claims are based on the same legal and remedial theories as the claims of the Class and arise from the same course of conduct by American Express.

29. Plaintiffs will fairly and adequately protect the interest of all Class members in the prosecution of this Action and in the administration of all matters relating to the claims stated herein. Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of the Class they seek to represent. Plaintiffs have retained counsel experienced in handling class action lawsuits involving United States federal law claims, state consumer law and breach of contract claims. Neither Plaintiffs nor their counsel have any interest that is antagonistic to those of the Class or which might cause them not to vigorously pursue this action.

30. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, in that:

    a) the losses suffered by the Class members are such that prosecution of individual actions is impractical or economically unfeasible;

    b) by contrast, the profits obtained by American Express as a result of its unlawful practices are substantial;

    c) in the absence of the class action device, Plaintiffs and the Class would be left without a remedy for the wrongful acts alleged, and American

Express will be unjustly enriched;

      d)    the prosecution of separate lawsuits by individual members of the Class would create the risk of inconsistent adjudications with respect to individual Class members, which would establish incompatible standards of conduct for American Express, making concentration of the litigation concerning this matter in this Court desirable;

      e)    the claims of the representative Plaintiffs are typical of the claims of the Class; and

      f)    no unusual difficulties are likely to be encountered in the management of this action as a class action.

31.    The Class is so numerous as to make it impracticable to join all members as Plaintiffs. Based upon the investigation of counsel, the number of members of the Class is estimated to be in excess of 100,000 persons.

## FIRST CAUSE OF ACTION

**(Violation of the Truth in Lending Act, 15 U.S.C. Sections 1601 *et seq.*)**

32.    Mr. Lopez and Ms. Greene repeat and reallege all paragraphs above as if set forth fully herein.

33.    In enacting TILA, Congress found:

> that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of [TILA] to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C. § 1601(a). Thus, the purpose of TILA is to assure meaningful

disclosures that accurately reflect the credit terms to which parties are legally bound.

34. Pursuant to TILA, credit card transactions are conducted under "open end credit plans," which TILA defines as "a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." 15 U.S.C. § 1602(i).

35. TILA and Regulation Z require a credit card issuer to clearly, conspicuously, and accurately disclose in writing the legal obligations of the parties, including the applicable annual percentage rate. 15 U.S.C. §§ 1637(a)(1), (a)(3) & (a)(4); 12 C.F.R. §§ 226.5(a), (c) & 226.6(a).

36. By failing to clearly and conspicuously disclose in the Solicitation Letter and Initial Disclosure that it could or would change Plaintiffs' and the Class' APRs for purchases from a fixed rate to a variable rate or that the APRs for purchases could increase for any reason other than the four listed grounds of default, American Express violated TILA, 15 U.S.C. § 1637(a); and Regulation Z. 12 C.F.R. § 226.5(a)(1).

37. By failing to disclose in the Agreement and Supplement that it could change Plaintiffs' and the Class' APRs for purchases from a fixed rate to a variable rate or that the APRs for purchases could increase for any reason other than the four listed grounds of default, American Express violated TILA and Regulation Z. TILA 15 U.S.C. § 1637(a); 12 C.F.R. §§ 226.5(a), (c) & 226.6(a). Alternatively, given the complete lack of reference or relation of the purported "Changing this Agreement" provision of the Agreement to the provisions of the Agreement and the Supplement disclosing a fixed rate for purchases, and by essentially hiding the "Changing this Agreement" provision in fine print, American Express failed to disclose clearly and conspicuously in the Agreement that it could change Plaintiffs' and Class' APRs for purchases from a fixed rate to a variable rate and it thereby

violated TILA and Regulation Z. *Barrer v. Chase Bank USA, N.A.*, 566 F.3d 883, 891-92 (9th Cir. 2009). Additionally, given the complete lack of reference or relation of the purported "Changing this Agreement" provision of the Agreement to the provisions of the Agreement and the Supplement disclosing a fixed rate for purchases, and the fact that those provisions provide four grounds for default as the only basis for increasing the fixed rate, and by essentially hiding the "Changing this Agreement" provision in fine print, American Express failed to disclose clearly and conspicuously in the Agreement that it could increase the fixed rate for purchases for reasons other than the four stated grounds of default, and it thereby violated TILA and Regulation Z. *Barrer,* 566 F.3d 883, *supra*.

38. As a result of American Express' violations of TILA and Regulation Z, Plaintiffs and the Class are damaged, and American Express is subject to the full extent of civil liability prescribed by law. American Express' failures to disclose clearly and conspicuously that it unilaterally reserved the right to change Plaintiffs' and the Class' APRs for purchases from a fixed rate to a variable rate or that the APRs for purchases could increase or change from a fixed rate to a variable rate for any reason other than the four listed events of default are material omissions giving rise to a presumption of reliance on the part of Plaintiffs and the Class that proximately caused damages to Plaintiffs and the Class. Plaintiffs and the Class are accordingly entitled to all actual and statutory damages pursuant to 15 U.S.C. § 1640(a), and to injunctive relief.

**SECOND CAUSE OF ACTION**

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

39. Mr. Lopez and Ms. Greene repeat and reallege all paragraphs above as if set full forth herein.

40. The Agreements between Plaintiffs and the other members of the Class and American Express provide for loans at fixed annual percentage rates. Specifically, the Agreement and the Supplement, consistent with the Solicitation

Letter and Initial Disclosure, obligated American Express to provide Plaintiffs and the other members of the Class with a 12.99% fixed rate APR for purchases (following the initial six month offer of 3.9%).

41. APR is a fundamental term of the use of credit and is critical to a consumer's ability to repay debt in a responsible and timely manner. A fixed APR was the central focus of American Express' Solicitation Letter and became a central term in the Agreement and the Supplement between Plaintiffs and the other members of the Class and American Express.

42. A covenant of good faith and fair dealing is implied in every contract, including those governing the use of credit between Plaintiffs and the Class and American Express. In particular, American Express' reservation of the unilateral and unrestricted right to modify the Agreement in its sole and unfettered discretion in the "Changing this Agreement" provision is subject to the covenant of good faith and fair dealing.

43. Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract.

44. Plaintiffs and members of the Class expressly bargained for credit for purchases at fixed APRs. The subsequent unilateral modifications of the purchase APRs from fixed to variable rates represents a fundamental change to the most material term of the Agreements and is clearly beyond the reasonable expectations of the parties. That it was unilaterally imposed by the party with superior bargaining power and resulted in an effectively higher APR solely to the detriment of Plaintiffs and the Class makes the conduct even more unreasonable by any objective standard.

45. By changing the purchase APRs from a fixed to a higher variable rate, American Express denied Plaintiffs and members of the Class of the benefits of their bargain.

13

46. Plaintiffs and members of the Class incurred damages and were injured as a result of paying additional interest on their loans due to American Express' unilateral modification of their APRs from fixed to variable rates.

### THIRD CAUSE OF ACTION

**(Violation of the "Unfair" Prong of California's Unfair Competition Law, California Business & Professions Code Sections 17200, *et. seq.*)**

47. Mr. Lopez and Ms. Greene repeat and reallege all paragraphs above as if set full forth herein.

48. California's Unfair Competition Law ("UCL") defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice.

49. A business act or practice is "unfair" under the UCL if it offends a legislatively declared policy, or if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

50. American Express has violated the "unfair" prong of the UCL by unilaterally changing and raising the APR of Plaintiffs and the Class from a fixed 12.99% rate to a 14.49% (or any other higher) variable rate. By failing to clearly and specifically disclose the potential for such a change in its Solicitation Letter, Initial Disclosure, Agreement and/or Supplement, and by acting in a manner that is contrary to and inconsistent with its prior disclosures, American Express Congress' legislatively declared policy of enabling and providing consumers with the informed use of credit. It, thereby, acted unfairly to Plaintiffs and the Class.

51. Plaintiffs and the Class relied on American' Express' promise to extend credit pursuant to a fixed APR by using their credit cards and establishing a credit balance on their cards. Plaintiff and the Class have and will continue to suffer extreme financial harm as a result of American Express' unilateral decision to subject their existing and future credit balances to a higher, variable APR. In short, unilaterally modifying the terms of credit after debt has been incurred is contrary to the reasonable expectations of Plaintiffs and the Class and constitutes

14

offensive, oppressive, unscrupulous, unconscionable, harmful and unfair conduct with the meaning of the UCL. American Express' only conceivable motive, reason or justification for changing the APR was to increase its revenues and profits at the expense of Plaintiffs and the Class. Accordingly, American Express' reasons, justifications and motive for changing and increasing the APR applicable to Plaintiff and the Class is far outweighed by the extreme gravity of the harm caused to Plaintiff and the Class.

52. American Express also engaged in unfair conduct by unilaterally inserting in its Agreement two unconscionable provisions. First, it inserted an arbitration provision that includes a class action waiver, which is contrary to a fundamental California right, contrary to California public policy and so unfairly one-sided that it is substantively unconscionable. Second, it inserted a generic clause that arguably purports to reserve for itself the sole right to change any term of its Agreement at any time and for any reason, "in accordance with applicable law" and effectively buried that provision in the back of its lengthy Agreement, which is also contrary to a fundamental California right, contrary to California public policy and so unfairly one-sided that it is substantively unconscionable. Since American Express had superior bargaining power and unilaterally inserted each of these provisions into a standard form contract which was offered on a take-it or leave-it basis, its insertion of these clauses into its cardmember Agreements was procedurally unconscionable.

53. By engaging in the acts and practices alleged herein, American Express has engaged, and continues to engage, in unfair business practices within the meaning of the UCL.

54. Through its unfair acts and practices, American Express has obtained, and continues to unfairly obtain, money from Plaintiffs and the Class in the form of excess finance charges. As such, Plaintiffs request that this Court cause American Express to restore this money to Plaintiffs and all Class members and to enjoin

American Express from continuing to engage in its unfair conduct as discussed herein. Otherwise, Plaintiffs and the Class will be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, Alfredo M. Lopez and Lauren R. Greene, on behalf of themselves and the Class, request the following relief:

A. An order certifying that this action is properly brought and may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs be appointed as Class Representatives, and that Plaintiffs' counsel be appointed Class Counsel;

B. Actual and statutory damages pursuant to 15 U.S.C. § 1640;

C. Damages for breach of the implied covenant of good faith and fair dealing;

D. Restitution and injunctive relief for violating the UCL;

E. An award of reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1640; and

F. Such other relief at law or equity as this court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiffs demand a jury trial for all claims so triable.

DATED: August 20, 2014   STANLEY LAW GROUP
MATTHEW J. ZEVIN

 */s/ Matthew J. Zevin*
MATTHEW J. ZEVIN

225 Broadway, Suite 1350
San Diego, CA  92101
Telephone:  (619) 235-5306
Facsimile:   (815) 377-8419

| | |
|---|---|
| 1 | BRAUN LAW GROUP PC |
| 2 | MICHAEL D. BRAUN |
| | 10680 W. Pico Boulevard, Suite 280 |
| 3 | Los Angeles, CA 90064 |
| 4 | Telephone:  (310) 836-6000 |
| | Facsimile:   (310) 836-6010 |
| 5 | |
| | STANLEY LAW GROUP |
| 6 | MARC R. STANLEY |
| |   (admitted *pro hac vice*) |
| 7 | mstanley@stanleylawgroup.com |
| | MARTIN WOODWARD |
| 8 |   (admitted *pro hac vice*) |
| | mwoodward@ stanleylawgroup.com |
| 9 | 3100 Monticello Avenue, Suite 750 |
| 10 | Dallas, TX  75205 |
| | Telephone:  (214) 443-4300 |
| 11 | Fax:   (214) 443-0358 |
| 12 | LAW OFFICE OF ANDREW KIERSTEAD |
| 13 | ANDREW S. KIERSTEAD; SBN: 132105 |
| | ajkier@aol.com |
| 14 | 1001 SW 5th Avenue, Suite 1100 |
| | Portland, OR  97204 |
| 15 | Telephone:  (508) 224-6246 |
| | Facsimile:   (508) 224-4356 |
| 16 | |
| 17 | LAW OFFICES OF PETER N. WASYLYK |
| | PETER N. WASYLYK |
| 18 |   (*pro hac vice* pending) |
| | pnwlaw@aol.com |
| 19 | 1307 Chalkstone Avenue |
| 20 | Providence, RI  02908 |
| | Telephone:  (401) 831-7730 |
| 21 | Facsimile:   (401) 861-6064 |
| 22 | LAW OFFICE OF JOHN KOENIG |
| | JOHN KOENIG, SBN: 132104 |
| 23 | johnkoeniglaw@roadrunner.com |
| 24 | 274 S Westgate Avenue |
| | Los Angeles, CA  90049 |
| 25 | Telephone:  (310) 472-2124 |
| 26 | Attorneys for Plaintiffs |
| 27 | |
| 28 | |

**PROOF OF SERVICE**
*Alfredo M. Lopez, et al. v. American Express Bank, FSB, et al.*
CASE NO.: CV09-7335SJO(MANx)

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action. I am employed in the County of San Diego, State of California. My business address is: 225 Broadway, Suite 1350, San Diego, CA 92101.

That on August 20, 2014, I served the following document(s) entitled: **SECOND AMENDED CLASS ACTION COMPLAINT** on ALL INTERESTED PARTIES in this action:

☐ **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service. The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in San Diego, California, on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ **BY CM/ECF Electronic Service:** I caused such document to be served via the Court's (NEF) electronic filing system on all registered parties.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 20, 2014, at San Diego, California.

*/s/ Matthew J. Zevin*
MATTHEW J. ZEVIN

CV09-7335SJO(MANx)